**UNITED STATES of America, Appellee,**

v.

**Richard A. SCARBOROUGH, Appellant.**

No. 74–1193.

United States Court of Appeals,
Fourth Circuit.

Argued Nov. 14, 1975.

Decided Jan. 29, 1976.

Certiorari Granted Oct. 4, 1976.
See 97 S.Ct. 56.

---

John D. Grad, Alexandria, Va. (Jonathan Shapiro and Philip J. Hirschkop, Alexandria, Va., on brief), for appellant.

Justin W. Williams, Asst. U. S. Atty., Alexandria, Va. (William B. Cummings, U. S. Atty., Norfolk, Va., on brief), for appellee.

Before BOREMAN, Senior Circuit Judge, and RUSSELL and FIELD, Circuit Judges.

DONALD RUSSELL, Circuit Judge:

Richard A. Scarborough was convicted of possessing firearms after a previous conviction of a felony in violation of 18 U.S.C. App. § 1202(a)(1). Defendant contends on appeal that: (1) the government failed to establish a nexus between his possession of the firearms and interstate commerce; (2) seizure of the weapons was not pursuant to a proper warrant, (3) the Court failed to instruct the jury that "knowing and intentional possession" may not be presumed from the discovery of objects within a person's dwelling; and (4) delay in the preparation of the trial transcript prejudiced the defendant and denied him due process of law. We affirm.

Scarborough was convicted of a felony in State Court in 1972.[1] On the morning of August 1, 1973, he was arrested by State officers while leaving his house and he had on his person at the time some 287 doses of LSD. A State search warrant, supported by ample probable cause, was obtained.[2] The police requested an ATF agent to accompany them during the search of the defendant's house.[3] The police discovered four firearms in defendant's bedroom.[4] These were turned over to the ATF agent

---

1. He was convicted of possession with intent to distribute narcotics.

2. The search warrant was issued pursuant to a sworn affidavit of a State investigator setting forth the following facts: That he had received from a confidential informant information that Richard Scarborough was selling illegal drugs from his home; that the informant had himself purchased illegal drugs from Scarborough on numerous occasions during the "last six months;" that on July 16, 1973, the confidential informant and an undercover agent went to Scarborough's home where the undercover agent observed the confidential informant purchase $125 worth of LSD; the undercover agent had a conversation on the night of July 16, 1973, with Scarborough concerning other illegal drugs which Scarborough said he had in his possession; she observed a container which Scarborough said contained part of his "stash;" also the undercover agent observed numerous illegal pills and suspected marijuana referred to by Scarborough as "Columbian;" and finally the affidavit related the arrest of Scarborough on the State distribution warrant, and the finding of the additional LSD and the suspected phencyclidine on Scarborough's person.

3. The local police had been informed that Scarborough carried a weapon and they wished the ATF agent to accompany them to be present during the arrest, and as an adviser since he had particular qualifications as a firearms expert.

4. A Colt Cobra 2-inch revolver was found in a nightstand or bureau drawer close to the bed in the master bedroom; a French revolver (St. Etienne) was found in the bedroom; a Universal Arms Company Enforcer .30 caliber and a .30 caliber U.S. M–1 carbine were found under the bed. All of the weapons were loaded except the French revolver.

for unloading (three were loaded), after which they were seized. Defendant was charged with "receiving and possessing" the firearms. At the close of the Government's case, the Court granted defendant's motion for a judgment of acquittal on the part of the indictment alleging "receipt," stating "I don't think there is any evidence of receipt of any weapon after he was a convicted felon." The conviction accordingly rests entirely on possession of the firearms.

There is no dispute that each weapon had previously traveled in interstate commerce.[5]

Consistently since the enactment of the gun control legislation incorporated in the Omnibus Crime Control and Safe Streets Act of 1968, this Circuit has sustained convictions under that statute,[6] where the interstate commerce nexus requirement of the possession offense under the statute was supported by proof that the possessed firearm had previously traveled in interstate commerce. We find nothing in *United States v. Bass* (1971) 404 U.S. 336, 92 S.Ct. 515, 30 L.Ed.2d 488, to compel any change in this ruling and we have since that decision continued to employ the same test for the offense of possession under § 1202(a) as before.

■ In a recent decision, however, the Second Circuit concluded that *Bass* requires that any conviction for possession under § 1202(a) must be supported by proof that possession was contemporaneous with interstate commerce movement. *United States v. Bell* (2d Cir. 1975) 524 F.2d 202 (Decided October 6, 1975). It reaches this result by finding that the Court in *Bass* made a distinction between the offenses of *receipt* and *possession* under the statute and that, while contemporaneous interstate commerce movement was not mandated for the offense of *receipt* it was so mandated for *possession*. A careful reading of the statute itself, in our judgment does not support this result nor do we perceive in *Bass* any language that compels this construction of the statute. The Court in *Bass* was not, in our opinion, fixing precise criteria for establishing the degree of proof of interstate commerce movement required under the statute for the offenses of *receipt* and *possession*. This is plain from the language of the Court to the effect that "[T]he Government can obviously meet its burden [of proving interstate movement] in a variety of ways" under the statute and observed that it was noting "only some of these."[7] We are of the opinion that the Congressional purpose as expressed in the statute itself was that it was only necessary to establish that the firearm had previously traveled in interstate commerce to make out the offense whether of possession or of receipt and that *Bass* did not hold otherwise.

■ We find the language of Judge Young in *United States v. Snell* (D.Md. 1973) 353 F.Supp. 280, 284, convincing. He said:

* * * And if Congress did wish to establish a different interstate nexus for possession than for receipt, it could easily have resorted to the explicit language of other statutes by which it made it clear that the offense was to be limited to transactions contemporaneous with interstate transportation. E. g. the offense of receipt of stolen goods, 18 U.S.C. §§ 2314–2317, is limited to receiving goods "moving as, or which are a part of, or which constitute" interstate commerce.

What is not understandable is that possession should be treated any differently from receipt. A construction of Section

---

**5.** The undisputed evidence showed that the .30 inch caliber Enforcer was manufactured in Florida and shipped from Florida to Virginia, that in 1973, a year after Scarborough had been convicted of a felony, there was ordered from the Florida company on two occasions parts for the Enforcer; the Colt Cobra revolver was manufactured in Connecticut and the totally assembled revolver was shipped from Connecticut to North Carolina; the M–1 carbine was shipped from Illinois to Maryland, and the St. Etienne French revolver was manufactured in France during the nineteenth century.

**6.** 18 U.S.C.App. § 1202(a).

**7.** 404 U.S. at 350, 92 S.Ct. [515] at 524.

1202(a) that would read a different interstate commerce nexus into "possession . . . in commerce or affecting commerce" and "receives . . . in commerce or affecting commerce" would create, rather than resolve, ambiguity. A differing approach to the two parallel phrases thus seems inconsistent with the thrust of the *Bass* decision.

This analysis of Part III of the opinion in *United States v. Bass* indicates that the Supreme Court did not intend its language therein to substitute for the sort of statutory construction of Section 1202(a) which has lead this Court to conclude that the possession offense is not limited to possession while the firearm is in the stream of commerce.

We accordingly see no reason to recede from our former opinion that the offense of possession under the statute compels only proof that the firearm has previously traveled in interstate commerce.[8]

■ Defendant next argues that it was error not to suppress the weapons seized since there was no federal warrant. However, the record shows that this was a lawful search under a valid State warrant. Therefore, the Court below was correct in admitting the weapons into evidence.[9] The evidence also indicates that there were several people on the premises being searched, thus raising the danger that the weapons might be removed if the ATF agent left to obtain a federal warrant. As we said in *Anglin v. Director* (4th Cir. 1971) 439 F.2d

1342, 1347, *cert. denied* 404 U.S. 946, 92 S.Ct. 302, 30 L.Ed.2d 262 (1971); "[O]nce the privacy of the dwelling has been lawfully invaded, it is senseless to require police to obtain an additional warrant to seize items they have discovered in the process of a lawful search."

■ We find no merit in defendant's contention that the Court failed properly to instruct the jury on the matter of possession. In fact, the Court instructed the jury that mere knowledge was not sufficient, but that possession depended on the defendant's "control and dominion" over the weapons. Evidence of the defendant's "control and dominion" over the weapons was quite sufficient to support the verdict.[10]

■ We find defendant's remaining ground without merit. He was not prejudiced by the delay in the transmittal of the transcript of his trial.

The conviction is accordingly affirmed.

---

8. *United States v. Smothers* (4th Cir. 1974) 508 F.2d 839; *United States v. Davis* (4th Cir. 1974) 498 F.2d 1398; *United States v. Kline* (4th Cir. 1974) 506 F.2d 1398; *United States v. Jordan* (4th Cir. 1974) 502 F.2d 1163; *United States v. Mullins* (4th Cir. 1973) 476 F.2d 664. This view has been followed by other circuits: *United States v. Bush* (6th Cir. 1974) 500 F.2d 19, 21; *United States v. Day* (6th Cir. 1973) 476 F.2d 562, 569; *United States v. Brown* (6th Cir. 1973) 472 F.2d 1181, 1182; *United States v. Haley* (8th Cir. 1974) 500 F.2d 302, 304; *United States v. Lupino* (8th Cir. 1973) 480 F.2d 720, 723–4, *cert. denied* 414 U.S. 924, 94 S.Ct. 257,

38 L.Ed.2d 159 (1973). *Contra, United States v. Cassity* (9th Cir. 1974) 509 F.2d 682, 683.

See, also, Barrett v. United States (1975) 423 U.S. 212, 96 S.Ct. 498, 46 L.Ed.2d 450, 18 Cr.L. 3033, Decided January 13, 1976.

9. *See, United States v. Johnson* (4th Cir. 1971) 451 F.2d 1321, 1322, *cert. denied* 405 U.S. 1018, 92 S.Ct. 1298, 31 L.Ed.2d 480 (1972).

10. Two of the weapons were under the bed, and the other two were in drawers less than five feet from the bed. Three of the weapons were loaded.