UNITED STATES of America, Plaintiff-Appellee,

v.

Walter Richard SMITH, a/k/a Bobby Smith, Defendant-Appellant.

No. 78–5167.

United States Court of Appeals, Fifth Circuit.

March 22, 1979.

Frank K. Martin, Columbus, Ga., for defendant-appellant.

Barry E. Teague, U. S. Atty., D. Broward Segrest, Asst. U. S. Atty., Montgomery, Ala., for plaintiff-appellee.

Before MORGAN, RONEY and VANCE, Circuit Judges.

VANCE, Circuit Judge:

On June 14, 1977 a federal magistrate in the Middle District of Alabama issued a search warrant authorizing the search of appellant's residence in Phenix City, Alabama, on a finding that there was probable cause to believe that gambling records and paraphernalia were concealed on the premises. The warrant was executed on June 16, 1977, by federal agents. During the search a substantial number of firearms were found.

More than four years before the search Smith had been convicted of violating 18 U.S.C. § 371, a felony. Title 18 U.S.C. App. § 1202(a) proscribes the receipt, possession and transportation of a firearm in interstate commerce by a convicted felon. Following the June 16, 1977 discovery and seizure of the firearms at Smith's home, he was indicted in four separate counts for violating § 1202(a). Count 1 related to his alleged possession of a Rohm 38 caliber revolver. Count 2 involved a Smith and Wesson 38 special revolver. Count 3 charged possession of a Remington 12 gauge shotgun, and Count 4 charged possession of a Winchester 22 caliber rifle. Smith was tried before a jury on December 5th and 6th, 1977. All four counts were submitted to the jury as a single charge, and the jury found Smith guilty. He was sentenced to imprisonment for a term of one year to be served consecutive to the sentence he had received in a gambling conspiracy case that also followed the search of his premises.

On appeal Smith presents eleven claims of error. We have considered all eleven but will discuss only his six most substantial claims.

I.

Smith first contends that he was entitled to a judgment of acquittal because the government failed to prove his possession of the guns as charged. His contention has two aspects: the government did not prove that he resided in the premises where the guns were found, and even if he did reside at that place, the government did not prove that he, rather than his wife, possessed the guns.

The first part of this contention is simply at variance with the record. The premises in question was a double-wide trailer located at 1307 Third Street South in Phenix City. In his opening statement Smith's attorney outlined the evidence he thought would show "how some of these guns came to be in Mr. Smith's trailer where he and his wife lived." During the trial Smith's counsel stated that the guns "were simply found in a domicile where he shares joint occupancy with another adult who can lawfully possess items in question." F.B.I. Agent Oliver testified that the premises searched was the residence of Walter Richard Smith, Jr. When Smith's sister, who testified as a defense witness, was asked whose residence the trailer was, she an-

swered, "That's where my brother lives, but it's on our property, my mother and step-daddy's property." The suggestion that the government should have proved that Smith had legal title to the premises or that he spent the night preceding the search in the trailer is not persuasive. Smith's attorney conceded in his opening statement, the government proved, and at no time during trial did anyone dispute that the trailer was Smith's residence.

Smith argues, however, that even if the weapons were in the place where he resided, they were not in his possession. The two pistols were found fully loaded in the top drawer of a night stand beside the bed in the master bedroom. The shotgun, loaded with three shells of buckshot, was propped against a wall in the dining room in plain view. The 22 caliber rifle, which was unloaded, was in a closet in the living room area.

▉ Like any other fact in issue, possession may be proved by circumstantial as well as direct evidence. The law also recognizes that possession may be either actual or constructive. The defendant had constructive possession if he had the intent and the power to exercise dominion and control over the weapons as charged. *United States v. Virciglio,* 441 F.2d 1295 (5th Cir. 1971); *United States v. Scarborough,* 539 F.2d 331 (4th Cir. 1976), *aff'd.,* 431 U.S. 563, 97 S.Ct. 1963, 52 L.Ed.2d 582 (1977). "In order to establish constructive possession, the government must produce evidence showing ownership, dominion, or control over the contraband itself or the premises or vehicle in which contraband is concealed." *United States v. Ferg,* 504 F.2d 914, 916–917 (5th Cir. 1974). Smith's dominion and control over his own residence, in which the guns were found, is a sufficient basis for the jury's inference of constructive possession. The guns were either in plain view or in places where they could hardly have escaped his knowledge. Smith claims, however, that the government has not disproved his contention that the guns were in the possession of his wife. In *United States v. Ransom,* 515 F.2d 885 (5th Cir.

1975), *cert. denied,* 424 U.S. 944, 96 S.Ct. 1412, 47 L.Ed.2d 349 (1976), this court approved a charge containing the following statement: "The law recognizes also that possession may be sole or joint. If one person alone has actual or constructive possession of a thing, possession is sole. If two or more persons share actual or constructive possession of a thing, possession is joint." 515 F.2d at 890–91. *See also, United States v. Jones,* 514 F.2d 648 (5th Cir. 1975); *United States v. Ferg, supra ; United States v. Verciglio, supra ; Garza v. United States,* 385 F.2d 899 (5th Cir. 1967). The facts in the present case are similar to those in *United States v. Scarborough, supra.* We have no more difficulty than did the *Scarborough* court in concluding that evidence of "the defendant's 'control and dominion' over the weapons was quite sufficient to support the verdict." 539 F.2d at 334.

II.

▉ Smith next contends that the trial court erred in submitting a single issue of guilt or innocence to the jury when Smith was charged in four separate counts. This contention is an outgrowth of Smith's original motion to dismiss the indictment in which he alleged that the indictment improperly stated four separate counts but charged only one offense against the United States. The latter contention is supported by *United States v. Rosenbarger,* 536 F.2d 715 (6th Cir. 1976), *cert. denied,* 431 U.S. 965, 97 S.Ct. 2920, 53 L.Ed.2d 1060 (1977); and *United States v. Kinsley,* 518 F.2d 665 (8th Cir. 1975), in which the courts held that simultaneous possession of several weapons constitutes only one offense under Section 1202(a). The trial judge agreed that only one offense was charged and instructed the jury accordingly. Smith's present complaint is directed to the manner in which he instructed the jury, but his position is inconsistent with the position taken by his counsel at trial. Although his counsel tried to preserve his original objection with respect to the multiplicity of the indictment, he expressed approval of the court's charge:

The only objection we have is that from the first motion forward we have contended this is all multiplicious prosecution. The government made four charges out of one charge. At this point we do not want to waive our past objection, but if the court is asking that we try to give anything we thought it might be helpful, without waiving our objection, *we think the way the judge phrased it best deals with the problem.* I don't think I could say much more than that because I don't want to get into a contradictory position when the jury goes out and we begin to make objections. I don't want to appear contradictory but *I think the way we stand now if the judge thinks it should perhaps be left that way, all right,* but we don't want to be considered participating in a waiver at this point. [Emphasis added.]

The principal danger of a multiplicitous indictment is that the defendant may receive multiple sentences for the same offense. We also recognize that a second danger arises; namely, an adverse psychological effect on the jury may result from the suggestion that several crimes have been committed. *United States v. Hearod,* 499 F.2d 1003 (5th Cir. 1974). One authority takes the position that charging a single offense in several counts remains permissible, but the federal rules of procedure are designed to discourage the practice. 1 *C. Wright, Federal Practice and Procedure,* § 142, at 311 (1969) (citing *United States v. Universal CIT Credit Corp.,* 344 U.S. 218, 221, 43 S.Ct. 227, 97 L.Ed. 260 (1952) and *United States v. Bent,* 175 F.2d 397, 400 (8th Cir.), *cert. denied,* 338 U.S. 829, 70 S.Ct. 79, 94 L.Ed. 504 (1949)). Professor Wright correctly states, however,

> An indictment or information charging the same offense in more than one count is multiplicitous, but this also is not fatal and does not require dismissal of the indictment. Defendant may move to have the prosecution elect, and the counts will be consolidated and all but the one elected dismissed, but even this is discretionary with the court. The principal danger

in multiplicity is that defendant will be given multiple sentences for the same offense. A remedy is available at any time if defendant is given multiple sentences.

1 *C. Wright, Federal Practice and Procedure,* § 145, at 336 (1969) (citations omitted).

In this case defendant moved only for a dismissal to which he was not entitled. The trial judge agreed with defendant that only one offense was charged. With defendant's express agreement he so instructed the jury. Defendant did not object to the form of the verdict. We cannot perceive a basis for any suggestion that in this very simple, straightforward fact situation the psychological climate among the jury could have been made adverse to the plaintiff by the form of the indictment. The plaintiff was not surprised, is fully protected from double jeopardy, has demonstrated no prejudice whatever, and was given one sentence only. We conclude that there is no merit to the contention.

### III.

■ Prior to trial defendant filed a formal written motion requesting that all bench conferences and proceedings in chambers be transcribed by the official court reporter. During the trial, however, numerous bench conferences and conferences in chambers were held without a recording of the proceedings. The court followed what the parties describe as its usual practice by affording counsel for defendant an opportunity to "make a record" at the next recess of court. Defendant claims that this procedure was too burdensome and that he was prejudiced by the trial court's failure to enforce the requirements of 28 U.S.C. § 753(b).

The trial court's failure to comply with section 753(b) does not constitute error per se and will not justify a reversal without a specific showing of prejudice if defendant's trial and appellate counsel are the same

person. *United States v. Selva,* 559 F.2d 1303 (5th Cir. 1977).[1]

The law in the circuit was stated somewhat more forcefully in *United States v. Brumley,* 560 F.2d 1268 (5th Cir. 1977). This court speaking through Judge Coleman stated that the rule requiring the reporter to record verbatim all proceedings in criminal cases held in open court "is mandatory . . . and is *not* to be overridden by local practice." 560 F.2d at 1280. The court stated further,

> [W]e strongly disapprove of the court's failure to require the recording of bench conferences and, speaking as a panel only, we suggest that if the trial court needs to confer with counsel about rulings to be made from the bench the safe course is to excuse the jury or retire to chambers and let the reporter record what takes place.

560 F.2d at 1281.

It is apparent that some trial courts ignore the *Brumley* language describing the mandatory nature of the rule and view the opinion as merely offering advice that these courts elect not to follow. We recognize that many trivial, unimportant conversations, frequently concerning only the convenience of court and counsel, take place at side bar conferences. At other times clarification is sought, and no rulings are made. Courts such as the district court in this instance are slow to give up past practices when the recording of all such trivia is regarded as an unnecessary nuisance that does not affect substantial rights of the parties. The enactment of Congress, however, is unequivocal. It is a protection that the law extends to the accused, and we cannot countenance its systematic and deliberate violation, particularly in the face of a specific request by one of the parties.

The presentation of the case before us was simple. The rulings were not complex. No specific prejudice arising out of the failure to record any particular ruling has been demonstrated. Our application of the rule in *Selva, supra,* results in our concluding that reversible error in this instance is not shown. We have further assured ourselves of the absence of prejudice by considering appellant's version of all unreported rulings and directions by the court.

With respect to the prospective application of the statute's requirement, however, it is appropriate that the courts of this circuit take notice that our future consideration of prejudice will be viewed in the light of the language of *Brumley* with respect to the mandatory nature of the requirement. It will be unfortunate if reversal of otherwise error-free convictions is the only way by which this simple and understandable requirement can be enforced.

## IV.

■ Appellant next complains that he was prejudiced by the trial court's failure to grant a continuance because he was unable to secure the presence of two witnesses. The first was Mrs. Linda Johnson Bland. Mrs. Bland had given a statement in which she claimed to have purchased the shotgun that was found in Smith's home and to have lent it to Mrs. Smith for her protection. Mrs. Bland's whereabouts were unknown at the time of the trial. She could be found by neither the government nor the defendant, and there was no showing that a continuance would enable either party to find her. The second missing witness was Mr. Jack Wall, a detective of the Columbus, Georgia Police Department. Detective Wall was believed by Smith's counsel to be able to testify that the presence of the firearms in Smith's home was known to some law enforcement agencies before the search warrant was issued. Mr. Wall was present in the area but was claimed by defense counsel to have been in the family room of the intensive care unit at a local hospital where his father was a patient. Defense counsel preferred not to disturb Mr. Wall with a subpoena under those circumstances.

---

1. *Selva* provides, however, that when a criminal defendant is represented at trial by one lawyer and on appeal by another, violation of the rule with a substantial omission from the record automatically works a reversal. This anomalous rule seems to invite the manipulation of appellate causes to achieve unmerited reversals.

The trial in this case took place almost six months after the search of the Smith residence. Smith engaged counsel less than a month after the search took place. The arraignment was on October 7, almost sixty days prior to trial. The case was originally consolidated with the gambling conspiracy case that was set for trial on October 31 but was severed on defendant's motion, and this case was reset for December 5, 1977.

█ Defendant's motion for continuance was addressed to the sound discretion of the trial court. The denial of that motion by the trial judge is not due to be disturbed by us unless defendant can show that there was an abuse of that discretion. The record clearly discloses that Smith was given ample time to prepare this comparatively simple case. In *United States v. Uptain*, 531 F.2d 1281 (5th Cir. 1976), we recognized that from the mass of cases involving varying factual contexts, a general rule had emerged:

> A movant must show that due diligence has been exercised to obtain the attendance of the witness, that substantial favorable testimony would be tendered by the witness, that the witness is available and willing to testify, and that the denial of a continuance would materially prejudice the defendant.

531 F.2d at 1287 (quoting *United States v. Miller*, 513 F.2d 791, 793 (5th Cir. 1975)). With respect to Mrs. Bland and Detective Wall, one or more of these requirements is not met. We conclude therefore that an abuse of discretion has not been shown.

## V.

█ Defendant filed a motion *in limine* seeking to bar the introduction of evidence of his November 1977 conviction for "gambling violations." He alleged that the 1977 conviction arose out of the same transaction as the offense for which he was being tried. Smith relied on *United States v. Martinez*, 555 F.2d 1273 (5th Cir. 1977), which he correctly interpreted as stating the controlling rule. Under *Martinez* a defendant's credibility may not be attacked by proof of a prior conviction that arose out of the

same transaction as the present charge. Martinez was first tried for aiding and abetting and subsequently was tried on a charge of conspiracy that arose out of the identical facts. Martinez was impeached by use of the contemporaneous facts involved in his present charge. This court concluded that the prejudicial effect, not merely on the issue of credibility, but also on the ultimate question of guilt or innocence, far outweighed the value of such evidence.

The flaw in Smith's contention is found in the factual distinction between the present case and *Martinez*. The prior conviction that Smith sought to suppress by his motion *in limine* is now before this court in Case No. 77–5763. It involves three counts, the first of which alleges a conspiracy extending from February 1, 1976 through June 16, 1977 to carry gambling paraphernalia in interstate commerce and to conduct an illegal gambling business in violation of 18 U.S.C. §§ 1953 and 1955. The second count was a substantive count charging that during the same period Smith and others conducted an illegal gambling business in violation of 18 U.S.C. § 1955. The third count charged that during the same period Smith and others carried gambling paraphernalia in interstate commerce in violation of 18 U.S.C. § 1953. The indictment in this case charges the proscribed possession of a firearm by a felon on June 16, 1977. The offenses are totally unrelated except for the coincidental discovery of evidence pertaining to both during the search of the Smith premises on June 16, 1977. The *Martinez* rule cannot be extended to bar evidence of a prior conviction for an unrelated offense.

## VI.

█ Finally, appellant claims that the conduct of the prosecutor during his closing argument was improper. The defense claimed that all of the weapons in the trailer were in the possession of Mrs. Barbara Smith, the wife of the defendant. During the initial portion of the government's argument, the following exchange took place:

MR. SEGREST: . . . . You would have to believe that Barbara Smith is a pistol-packing mama to believe that all of those guns are hers, to her exclusive possession, and that Walter Richard Smith doesn't possess those guns. And why haven't we heard from Barbara? Those guns were fully loaded and we believe the inference from the evidence is that they were loaded—

MR. MARTIN: Excuse me.

Your Honor, we want the record to note that we are making an objection for the government asking why Mrs. Smith has not been heard from.

THE COURT: Overrule the objection.

MR. MARTIN: May I perfect it at a later time?

THE COURT: You have already perfected it. You have objected to it, that is all you need to do.

CLERK: Mr. Segrest?

MR. SEGREST: All we are saying is that when one party has more access to a witness than the other party, if they don't put that witness on the stand—now, the defense doesn't have to put any witnesses on the stand, we are not arguing that, but if those were her guns why didn't he put her on the stand and let her say so? After all, they have access to that witness. She was here the whole time. You have a right to infer that had she taken the stand she would have testified that those were her husband's guns.

MR. MARTIN: Objection, Your Honor.

THE COURT: Overruled.

MR. MARTIN: Ask the court for a mistrial.

THE COURT: Overruled, deny the motion.

Without question the argument of the prosecutor and the ruling by the court constituted error. The principle as stated in *United States v. Parr*, 516 F.2d 458, 471 (5th Cir. 1975) that "[f]ailure to produce a favorable witness peculiarly within a party's power creates an inference that his testimony would be unfavorable" does not apply to the spouse of the defendant. This is the clear effect of our most recent cases. *See*

*United States v. Price*, 573 F.2d 356 (5th Cir. 1978); *United States v. Pariente*, 558 F.2d 1186 (5th Cir. 1977); *United States v. Black*, 497 F.2d 1039 (5th Cir. 1974). *Contra, United States v. Seay*, 432 F.2d 395 (5th Cir. 1970), *cert. denied*, 401 U.S. 942, 91 S.Ct. 949, 28 L.Ed.2d 223 (1971). The rule applied in these cases is an extension of the protection afforded by the personal privilege that a non-party spouse not be required to give testimony.

We have recognized, however, that a violation of the rule does not require automatic reversal. The government correctly points out that in cases presenting related questions we have held that error, if any, was cured by appropriate instructions. *See United States v. Sheriff*, 546 F.2d 604 (5th Cir. 1977). We have also indicated that when such an error occurs the conviction may be upheld if the error appears from the record to have been harmless. *United States v. Pariente, supra.*

The instructions in this case do not help the position of the government. It is true that the trial court twice instructed the jury that defendant had no burden to call any witness or produce any evidence whatever. It also gave the following instruction that concededly referred to defendant's wife:

> Now, there has been some talk about the absence of a witness in this case. I charge you that if it is peculiarly within the power of either the prosecution or the defense to produce a witness who could give material testimony on an issue in the case, a failure to call that witness may give rise to an inference that his testimony or her testimony would be unfavorable to the party who had the peculiar power to produce that witness.

Defendant objected to this instruction. We therefore cannot conclude that the error was cured by an appropriate instruction. Indeed, it was clearly compounded.

It is equally impossible to conclude that the error was harmless. The bottom line of the only argument that defendant could make was that the guns were in his wife's

possession. This was the very heart of Smith's defense. We cannot say under these circumstances that the prosecutor's improper argument was harmless.

The conviction is reversed, and the case remanded for a new trial.

REVERSED AND REMANDED.