UNITED STATES of America, Appellee,

v.

Carlton Eugene MARTIN, Appellant.

UNITED STATES of America, Appellee,

v.

Michael Keith SCOTT, Appellant.

Nos. 82–2295, 82–2334.

United States Court of Appeals, Eighth Circuit.

Submitted March 18, 1983.

Decided May 12, 1983.

James M. Rosenbaum, U.S. Atty., Thomas B. Heffelfinger, Asst. U.S. Atty., Minneapolis, Minn., for appellee.

Carolyn P. Short, Minneapolis, Minn., for appellant Martin.

Thomas Jensen, Minneapolis, Minn., for appellant Scott.

Before HEANEY, ROSS and FAGG, Circuit Judges.

FAGG, Circuit Judge.

Carlton Martin and Michael Scott each appeal their jury conviction for the unlawful possession of handguns by a felon. *See* 18 U.S.C.App. § 1202(a)(1). They assert that the following errors require reversal: (1) the initial stop of the automobile in which the guns were found was unlawful, as was their arrest, thereby invalidating the subsequent auto search; (2) there was insufficient evidence to support Scott's conviction; and (3) certain remarks by the trial judge prejudiced appellants' right to a fair trial. We reject each of these arguments and affirm.

In the early morning of May 20, 1982, two uniformed Minneapolis police officers observed two women on a street corner who they believed to be engaged in prostitution. The officers stopped the women to identify them but neither of them had any identification. They both denied any connection to a 1976 Cadillac with Missouri license plates that the officers had observed for some time at this intersection. The officers advised the women to leave the area.

After the officers left the intersection, they requested by radio a license plate check on the Cadillac. The officers drove around the block, then saw the two women getting into the Cadillac with Martin and Scott and decided to follow them. Shortly, the officers received the results of the license check, which showed that the license plates of the Cadillac were registered to a 1972 Buick, and they stopped the Cadillac. While approaching the Cadillac the officers

observed that the license plates were held in place with light wire. The officers asked the men to identify themselves but both stated that they did not have any identification. Martin stated that the car belonged to him but he could not produce any registration or proof of ownership. The officers then arrested Martin and Scott for "probable cause, auto theft." A search revealed two loaded handguns in the car's unlocked glove compartment.

The district court held a hearing on Martin and Scott's motion to suppress and denied the motion. The district court's factual findings and determinations as to the existence of circumstances justifying the investigatory stop and warrantless arrest are subject to review under the clearly erroneous standard. *United States v. McGlynn,* 671 F.2d 1140, 1143 (8th Cir.1982); *United States v. Williams,* 604 F.2d 1102, 1121 (8th Cir.1979).

■ It is well settled that under certain limited circumstances, law enforcement officers may stop a motor vehicle for investigative purposes. Such a stop is permissible when the officers are aware of particularized, objective facts which, taken together with rational inferences from those facts, reasonably warrant suspicion that a crime is being committed. *United States v. Cortez,* 449 U.S. 411, 417–18, 101 S.Ct. 690, 694–95, 66 L.Ed.2d 621 (1981); *Terry v. Ohio,* 392 U.S. 1, 20–22, 88 S.Ct. 1868, 1879–80, 20 L.Ed.2d 889 (1968); *United States v. Schmidt,* 662 F.2d 498, 503 (8th Cir.1981). We believe the police officers in the present case had the requisite particularized and objective grounds reasonably to infer that criminal activity was afoot, including the lingering Cadillac automobile occupied by two men at a late hour, the women without any identification entering the car after disavowing any connection with it, and the car bearing an irregular license plate. Under these circumstances the officers were warranted in stopping the Cadillac for investigative purposes.

■ Martin and Scott argue that the officers had not received the results of the license plate check by the time of the investigatory stop, and thus, were not warranted in making the stop. Scott testified that he overheard license plate information on the radio after he had been placed in the police car. The officers, on the other hand, testified that they received the information regarding the license plate before they stopped the Cadillac. The trial judge heard extensive testimony concerning this dispute, observed the demeanor of the witnesses, and made specific factual findings crediting the testimony of the officers. Although both versions of the event are credible, the judge's findings have support in the record and are not clearly erroneous.

■ We next must determine whether there was probable cause for the arrest of Martin and Scott. To determine whether the arrests were based on probable cause, we must look to the cumulative knowledge of the arresting officers and, in so doing, we conclude that the facts and circumstances within the officers' knowledge and of which they had reasonably trustworthy information were sufficient reasonably to warrant a prudent person in believing that the suspects had committed an offense. *United States v. Swayne,* 700 F.2d 467 at 469 (8th Cir.1983); *United States v. McGlynn, supra,* 671 F.2d at 1143–44. The information the officers obtained upon stopping the Cadillac driven by Scott escalated the factual basis from one permitting an investigatory stop to one warranting an arrest. The men did not have any identification; Martin, although claiming ownership of the Cadillac, could provide no evidence of ownership; and the license plate, which listed to a different automobile, was only wired onto the Cadillac. All of the facts and circumstances at hand at the time of arrest were consistent with the officers' belief that the car had been stolen by Scott and Martin.

Scott contends the trial court erred in denying his motion for judgment of acquittal on the ground of insufficiency of the evidence. In considering this challenge we must examine the evidence in the light most favorable to the government and decide whether a reasonable jury could find

that the evidence establishes guilt beyond a reasonable doubt. *United States v. Singer,* 660 F.2d 1295, 1301 (8th Cir.1981).

■ Three elements comprise a violation of section 1202(a)(1): (1) knowing possession of (2) a prohibited weapon in or affecting interstate commerce (3) by a convicted felon. *See United States v. Jackson,* 680 F.2d 561, 563 (8th Cir.1982). Scott focuses solely on whether there was sufficient evidence for the jury to find that the first element, knowing possession, was satisfied.

■ Possession need only be constructive to support a conviction under 18 U.S.C.App. § 1202(a)(1). *United States v. Nolan,* 700 F.2d 479, 485 (9th Cir.1983). Such possession may be joint, in that it may be shared by two or more persons. *United States v. Smith,* 591 F.2d 1105, 1107 (5th Cir.1979). Our review of the evidence shows that Scott and Martin had an apparent close friendship. They had traveled together from Kansas City to Minneapolis in the Cadillac four or five days before the arrest. Scott had driven the car alone in Minneapolis prior to the night of the arrest. Scott was the driver of the car at the time of the arrest, the women who had just entered the car were sitting with him in the front seat and the owner of the car, Martin, was in the rear seat. Two handguns were discovered in the glove compartment. Upon arrest Scott maintained that the glove compartment was locked and there was no key for it; however, the key to the compartment was found under the driver's seat where he was sitting. We believe this evidence serves as a substantial basis for submission of the first element, knowing possession, to the jury.

■ Finally, we must decide whether comments by the trial judge upon the evidence during the course of the jury charge were prejudicial to Martin and Scott and denied their right to a fair trial. The evidence showed that the women in the Cadillac were prostitutes, but the exact nature of their relationship to Martin and Scott was not established, nor was it an issue in the trial. The trial judge instructed the jury that if they thought the guns belonged to the prostitutes, and that they put the guns in the glove compartment when they saw the police approaching, then Martin and Scott should be acquitted. The court added, however, that the jury should consider Martin and Scott's role as "pimps" in determining who owned the guns.

After defense counsel objected to this characterization, the trial judge promptly disavowed the statement, noted for the jury that there was no direct evidence on this issue, and reminded the jury that the men were only on trial for the acts charged in the indictment. The charge also made it clear to the jury that all factual matters were submitted to their determination. *Gant v. United States,* 506 F.2d 518, 520 (8th Cir.1974), *cert. denied,* 420 U.S. 1005, 95 S.Ct. 1449, 43 L.Ed.2d 764 (1975).

Based upon our review of the record we are left with the firm impression that the judge's inappropriate comment was the product of mistake, not impermissible prosecutorial advocacy or one-sidedness. We also believe the judge's prompt withdrawal of his inaccurate remark effectively cured whatever error had been made. *See United States v. Ness,* 652 F.2d 890, 893 (9th Cir. 1981); *United States v. Ming Sen Shiue,* 650 F.2d 919, 924 (8th Cir.1981); *United States v. Richman,* 600 F.2d 286, 296 (1st Cir.1979). We note further that no motion for mistrial was made. Under the circumstances, this single remark in the context of a three-day trial does not constitute reversible error.

Affirmed.