833 F.2d 310
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Robert D.H. RICHARDSON, Defendant-Appellant.
 No. 87-5006.
 United States Court of Appeals, Fourth Circuit.
 Argued Oct. 8, 1987.
Decided Nov. 2, 1987.
 
 Ty Cobb (Miles & Stockbridge on brief) for appellant.
 E. Thomas Roberts, Assistant United States Attorney (Breckinridge L. Willcox, United States Attorney on brief) for appellee.
 Before DONALD RUSSELL, JAMES DICKSON PHILLIPS, and WILKINSON, Circuit Judges.
 PER CURIAM:
 
 
 1
 Robert Richardson appeals his bench trial conviction of unlawful possession of a weapon in violation of 18 U.S.C. App. Sec. 1202(a)(1), contending that the evidence was insufficient to convict him. We disagree and affirm.
 
 
 2
 * On May 5, 1986, Sergeant Baker of the Prince Georges County Police Department, while on patrol in a marked police cruiser in Brandywine, Maryland, came upon a gold Cadillac bearing temporary tags that was parked partially off the roadway ahead of him. As he approached the Cadillac, Baker saw that it had two occupants in the front seat and that the one on the passenger side was pointing what Baker thought was an automatic weapon out the window in the direction of a row of houses located some 20 yards from the roadside. Alarmed, Baker suddenly braked the patrol car, and the resulting noise apparently alerted the occupants of the Cadillac. The passenger quickly pulled the gun back into the car, both occupants turned around and, upon seeing Baker, the driver sped away. Baker activated his emergency lights, notified the dispatcher by radio of his situation, and gave chase.
 
 
 3
 After a short time, during which the passenger in the Cadillac appeared to be maneuvering into a position from which he could fire at Baker, the Cadillac was brought to an abrupt stop. Baker stopped behind them, drew his gun and, using his door for cover, ordered the occupants to "put their hands where he could see them." Instead of surrendering, the driver again sped off at a high rate of speed. Baker again gave chase for a short distance until the Cadillac was again stopped by the driver at a dead-end.
 
 
 4
 Baker again got out of his patrol car and ordered the occupants to make their hands visible. The driver quickly opened his door, got out, and began walking away from Baker and toward the front of the Cadillac. Baker ordered him to stop and threatened to fire. The driver stopped and followed Baker's orders to back his way toward him while keeping his hands laced behind his head. The passenger remained in the Cadillac, looking over his shoulder at Baker and the driver. Baker ordered the driver to stop between the two vehicles, which he did. At this point, the driver told the passenger that Baker was not "kidding" around and that he should come out of the car as Baker ordered. At this point, Baker saw the passenger lean forward and drop partially out of sight. When he came back into view, he too left the car and joined the driver under Baker's guard.
 
 
 5
 A few minutes later, back-up support arrived. The Cadillac was searched and a gun was retrieved from the floorboard in front of the passenger seat. The gun was found to be an Intratec model TEC-9, 9 millimeter pistol, serial number 03241. Baker testified that he removed a magazine clip that was loaded with semi-jacket hollow point and lead ball bullets. The clip contained 22 bullets; one bullet was found in the chamber; one unspent bullet was found some 20 yards from the Cadillac, apparently having been ejected from the weapon; another unspent bullet was later found on the floorboard behind the passenger seat. A totebag containing additional 9 millimeter ammunition was found on the floorboard in front of the passenger seat and an additional clip was found under the same seat. No ammunition was discovered on the driver's side of the Cadillac. Nor were any weapons or ammunition apparently found on Robert Richardson's person.[1] Further investigation revealed that the vehicle apparently was owned by a female relative of Robert Richardson's.
 
 
 6
 As a result of this occurrence, Robert and Joseph Richardson were indicted in a three count indictment. Count I charged the Richardsons with conspiracy to violate federal firearms laws--specifically, 18 U.S.C. App. Sec. 1202(a)(1)--in violation of 18 U.S.C. Sec. 371. Count II charged Joseph Richardson, a convicted felon, with unlawful possession of a weapon, in violation of 18 U.S.C. App. Sec. 1202(a)(1). Count III charged Robert Richardson, also a convicted felon, with unlawful possession of a weapon, also in violation of 18 U.S.C. App. Sec. 1202(a)(1) and of 18 U.S.C. Sec. 2. Robert Richardson pleaded not guilty and the government elected to go to trial solely on Count III; Count I was voluntarily dismissed.[2] After a bench trial Robert Richardson was convicted and sentenced on Count III. This appeal followed.
 
 II
 
 7
 The sole issue raised on appeal is the sufficiency of the evidence to convict Robert Richardson of violating 18 U.S.C. App 1202(a)(1).
 
 
 8
 18 U.S.C. App. Sec. 1202(a)(1) provides, in pertinent part, that:
 
 
 9
 Any person who has been convicted by a court of the United States or of a State or any political subdivision thereof of a felony ... and who ... possesses ... in commerce or affecting commerce ... any firearm shall be fined not more than $10,000 or imprisoned for not more than two years, or both.
 
 
 10
 Conviction therefore requires proof of three elements: (1) the knowing possession of a prohibited weapon, (2) that has been transported in or affecting commerce, (3) by a convicted felon. Prior to trial Robert Richardson stipulated that: (1) he was a convicted felon, (2) the gun had been examined by a weapons analyst and found to be operable, and (3) the gun had been manufactured in the State of Florida and shipped from Florida to Arizona in 1985. The only disputed issue was therefore "knowing possession."
 
 
 11
 Knowing possession within the statute's meaning may be either actual or constructive. United States v. Wells, 721 F.2d 1160, 1162 (8th Cir.1983) (citation omitted); United States v. Scarborough, 539 F.2d 331 (4th Cir.1976), aff'd, 431 U.S. 563 (1977). And "such possession may be [exclusive or] joint, in that it may be shared by two or more persons." United States v. Martin, 706 F.2d 263, 266 (8th Cir.1983) (citation omitted). While "[a]ctual possession exists when a tangible object is in the immediate possession or control" of a defendant, United States v. Wilson, 620 F.Supp. 104, 105 (M.D.Tenn.1985) (quoting United States v. Beverly, 750 F.2d 34, 37 (6th Cir.1984), constructive possession "depend[s] on the defendant's 'control and dominion' over the weapon[ ]." Scarborough, 539 F.2d at 334. More precisely phrased, "[c]onstructive possession exists when a person does not have actual possession but instead knowingly had the power and the intention at a given time to exercise dominion and control over an object, either directly or through others." Wilson, 620 F.Supp. at 105.
 
 
 12
 Because it was undisputed that Robert Richardson never had actual possession or exclusive possession of the gun, the dispositive factual issue was further narrowed to whether he had constructive possession, whether joint or exclusive.
 
 
 13
 Our standard of review when a district judge's determination of guilt in a non-jury trial is challenged only for insufficiency of the evidence to support it is well established. We ask only whether there is substantial evidence, assessing it in the light most favorable to the prosecution, to support the ultimate finding of guilt. Jelaza v. United States, 179 F.2d 202, 205 (4th Cir.1950); see also Glasser v. United States, 315 U.S. 60, 80 (1942) (comparable standard in jury trials). Additionally, to the extent the district court has made special findings of fact, either at the defendant's request under Fed.R.Crim.P. 23(c), or sua sponte, we must accept those findings unless they are clearly erroneous. United States v. Merrill, 746 F.2d 458, 460 (9th Cir.1984) (Faced with a challenge to the sufficiency of the evidence, an appellate court must accept "the factual findings of the district judge [sitting as the trier of fact] unless ... they are clearly erroneous.").
 
 
 14
 Applying these standards, we can find no error in the district court's finding of guilt beyond a reasonable doubt.
 
 
 15
 As a threshold matter, the district court specifically found that Robert Richardson knew the gun was in the car. We cannot say that this finding was "clearly erroneous." Robert Richardson was necessarily in close proximity to the unconcealed gun throughout the period of the chase. When Baker approached the Richardsons, Joseph Richardson was pointing the gun out the window. During the ensuing chase, it obviously remained somewhere in the front seat area of the car. This left only the factual question whether Robert Richardson was in constructive possession of the gun of whose presence he was plainly aware.
 
 
 16
 On this specific issue, the district court again specifically found that the Richardson brothers were engaged in some type of joint venture to "examine" or test the gun. We think this finding was amply supported by the evidence and is certainly not clearly erroneous. Robert Richardson was in control of the Cadillac in which his brother was the sole passenger. Martin, 706 F.2d at 266 (close relationship between persons a factor to consider in finding joint constructive possession). He had the car parked off the side of a road, while his brother was pointing a gun out the passenger window, potentially at a row of houses. When threatened with apprehension, he fled from an officer of the law, apparently stopping only after he had reached a dead end. Though defense counsel sought to argue that Joseph Richardson owned the Cadillac, the evidence tended to show that it was actually owned by a relative of the Richardsons. Finally, though in his brief Robert Richardson claims that his brother admitting to having purchased and owned the gun, no objective evidence of ownership was presented. Specifically on the basis of this evidence, the district court concluded that Robert Richardson's acts of twice removing the vehicle containing his brother and the gun constituted conduct manifesting sufficient "dominion and control" over the gun as a part of its known contents to establish constructive possession. While mere unexplained proximity to a weapon may not alone support a finding of constructive possession, see United States v. Lamare, 711 F.2d 3, 5 (1st Cir.1983), there was more evidence here than mere proximity to support the court's finding of sufficient dominion and control to establish Robert Richardson's joint constructive possession of the gun here in issue.
 
 
 17
 We therefore affirm.
 
 
 18
 AFFIRMED.
 
 
 
 [1]
 At trial, Sergeant Baker testified that he could only assume that Robert Richardson was searched at the scene of his arrest. He did go on to testify, however, that to the best of his knowledge, no item pertaining to the gun was recovered from Robert Richardson
 
 
 [2]
 Joseph Richardson pleaded guilty to Count II