961 F.2d 1579
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
George W. LOWRY, III, Defendant-Appellant.
 No. 91-6169.
 United States Court of Appeals, Sixth Circuit.
 April 22, 1992.
 
 Before MILBURN and SUHRHEINRICH, Circuit Judges, and COHN, District Judge.*
 PER CURIAM.
 
 
 1
 Defendant George Lowry, III, appeals his jury conviction for possession of a firearm by a felon in violation of 18 U.S.C. § 922(g)(1). On appeal, the issues are (1) whether the district court abused its discretion by permitting references to the Outlaw Motorcycle Club ("Outlaws") during the government's cross-examination of defense witnesses and during closing argument, (2) whether there was sufficient evidence to support the conviction, and (3) whether the district court erred in overruling defendant's motion to suppress the weapon introduced in evidence against him. For the reasons that follow, we affirm.
 
 I.
 
 2
 On October 8, 1989, the United States Magistrate issued a search warrant authorizing the agents of the Bureau of Alcohol, Tobacco and Firearms ("ATF") to search the Outlaw compound in Chattanooga, Tennessee. In an affidavit in support of the warrant, it was alleged that a confidential informant had been inside the Outlaw compound on four occasions and that on each occasion he had seen firearms and controlled substances in plain view. Defendant was present on each of these occasions.
 
 
 3
 The affidavit recited that "the confidential informant has provided information in the past which has proven to be true and accurate based upon independent investigation resulting in the corroboration of such information on many occasions." J.A. 122. It also recited how the confidential informant had recently provided information that had resulted in the arrest of seven persons, three of whom had already entered guilty pleas in another district court. The informant's information was reinforced by affiant's recitation of defendant's criminal record which included convictions for possession of marijuana, three counts of auto theft, and possession of a firearm by a felon.
 
 
 4
 On October 11, 1989, law enforcement officers executed the warrant at the Outlaw compound. Upon entering the compound, ATF Agent Scott saw the defendant, whom he recognized, looking out the window of a bedroom later identified as the defendant's bedroom. When officers searched that room, they discovered a loaded .45 caliber semi-automatic pistol on the top shelf of a phonograph cabinet next to the bed. On another table, police found drug paraphernalia, ammunition, and a pouch containing $500 in cash. They also discovered $27,000 in cash in a safe next to the table. There were other weapons and some marijuana found in other parts of the house.
 
 
 5
 After the district court overruled defendant's motions to suppress evidence and to prohibit the government from referring to him as a member of the Outlaw Motorcycle Club, defendant testified that he tried to go to bed in the early morning hours of October 11, 1989, but found Jens Stendera, a visitor, already asleep in his bed. Defendant, therefore, spent the night on the couch. He denied all knowledge of the handgun.
 
 
 6
 On cross-examination, he admitted his prior felony convictions, that he had previously possessed a .45 caliber automatic pistol, that he used aliases to deceive people, and that he was proud to be an Outlaw. He further admitted that the room in which the pistol was found was his bedroom. His wife, Pamela Lowry, testified for him and admitted owning a jacket bearing the legend, "Property of the Outlaws."
 
 
 7
 Jens Stendera also testified as a defense witness. He claimed to be a former German law enforcement officer and produced a document purporting to be a license to carry a concealed weapon issued by the State of Florida. The license did not identify the gun he was permitted to carry. Stendera testified that the pistol found in defendant's bedroom belonged to him. He further testified that he had a bill of sale showing his purchase of the gun from a friend in Knoxville and that he had had this bill of sale in his possession at the time of the search. He admitted, however, that he did not inform the search team of his ownership of the pistol or of his bill of sale, and he never claimed the pistol.
 
 
 8
 On July 2, 1991, defendant was convicted of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1), and on September 30, 1991, he was sentenced to a term of imprisonment of twelve months and one day. This timely appeal followed.
 
 II.
 A.
 
 9
 Defendant argues that the district court erred in denying his pretrial motion for an order directing the government to refrain from referring to him as a member of the Outlaw Motorcycle Club. Defendant insists that any such references were irrelevant and that the court therefore abused its discretion in overruling his motion.
 
 
 10
 The district court thought it practically impossible to try the case without a reference to the Outlaws.
 
 
 11
 THE COURT: I don't think that the unfair prejudice outweighs the probative value here. And basically, I--number one, I don't think it's--just a mention of the name Outlaws or the reference to the name Outlaws, it hasn't been shown to me that that in itself generates any unfair prejudice.
 
 
 12
 I mean, maybe it's prejudicial to some extent just because of the fact that you're going to have testimony, maybe, I don't know, you say that there's going to be testimony from officers that say that people in motorcycle groups have guns. I guess it's prejudicial to that extent, but it's not unfairly prejudicial, that's what Rule 403 talks about.
 
 
 13
 J.A. 59. The district court then offered a cautionary instruction that would prohibit the jury from inferring criminal propensity from membership in any club, and the cautionary instruction was given.
 
 
 14
 A district court's ruling on evidentiary matters is reviewed for an abuse of discretion. Schrand v. Federal Pac. Elec. Co., 851 F.2d 152, 157 (6th Cir.1988). An abuse of discretion exists where the reviewing court is firmly convinced that a mistake has been made. Id. at 157. Additionally, in order to justify reversal, the error must affect a party's substantial rights. Id.; see also Zamlen v. City of Cleveland, 906 F.2d 209, 215-16 (6th Cir.1990), cert. denied, 111 S.Ct. 1388 (1991). The error is not harmless unless the court can say with fair assurance that the error did not affect the outcome of the case. Zamlen, 906 F.2d at 215-216. This determination is guided by such factors as the closeness of the case and whether the evidence bears heavily on a dispositive issue. Schrand, 851 F.2d at 157.
 
 
 15
 Defendant argues that the government's cross-examination of Mr. Stendera and defendant's wife, Pamela Lowry, concerning their association with the Outlaw Motorcycle Club was improper because it called for irrelevant testimony. However, defendant's argument fails to take into account the government's purpose for adducing this proof, namely, to show bias as a means of attacking credibility. Mrs. Lowry admitted that she had a jacket bearing Outlaw insignia and the phrase "Property of the Outlaws." Furthermore, although Stendera testified that he was not a member of the Outlaw Motorcycle Club, he admitted that he rode a Harley-Davidson motorcycle and that he had friends who were members of the Outlaws. He further testified that he was visiting the Outlaws' clubhouse because his motorcycle had broken down and because he had a local friend who was a member of the Outlaws.
 
 
 16
 Viewed in the light most favorable to the government, this evidence shows that defendant and both of his witnesses had common connections to or associations with the Outlaw Motorcycle Club or its membership. Proof of bias by a common club membership or association is a permissible means of attacking a witness' credibility, and these witnesses' associations with the Outlaws made the existence of their bias towards the defendant more probable.
 
 
 17
 The Supreme Court has defined bias as follows:
 
 
 18
 Bias is a term used in the "common law of evidence" to describe the relationship between the party and the witness which might lead the witness to slant, unconsciously or otherwise, his testimony in favor of or against a party. Bias may be induced by a witness' like, dislike, or fear of a party, or by the witness' self-interest. Proof of bias is almost always relevant because the jury, as finder of fact and weigher of credibility, has historically been entitled to assess all evidence which might bear on the accuracy and the truth of a witness' testimony.
 
 
 19
 United States v. Abel, 469 U.S. 45, 52 (1984).[1] In Abel, the Court also held that "[a] witness' and a party's common membership in an organization, even without proof that the witness or party has personally adopted its tenents, is certainly probative of bias." Id. Although Mrs. Lowry and Stendera may not have been members of the Outlaw Motorcycle Club, it was proper for the government to prove their associations with that club in order to reinforce the inference that they would lie to protect the defendant. Thus, viewed in the light most favorable to its proponent, this evidence was relevant, and the district court committed no error in admitting it.
 
 
 20
 Defendant also argues that the government misused defendant's association with the Outlaws in its closing argument. In particular, he contends that the government's argument to the jury was improper at two different points:
 
 
 21
 Now, think about it. Outlaws. Why, the very word itself means outside the law. They don't think they have to obey the law. The Defendant doesn't think he has to obey the law....
 
 
 22
 J.A. 112.
 
 
 23
 But I suggest to you somebody that hangs out with Outlaws is not a person that you should believe, not when it contradicts all human nature and the facts of this case.
 
 
 24
 J.A. 113.
 
 
 25
 Although the defendant did not object to either argument by the government, he now contends that this court must review the arguments for error, not plain error. Defendant argues that his motion in limine to restrict references to the Outlaws must be taken as a standing objection, not only to the admission of testimony concerning the defendant's or his witnesses' relationship to the Outlaws, but to any possible use in argument to which such evidence might be put.[2] On the other hand, the government argues that defendant's failure to object to its argument limits this court to a review for plain error affecting substantial rights.
 
 
 26
 However, it is clear that to interpret the motion in limine as defendant argues would frustrate the purpose for the rule requiring contemporaneous objections to matters in argument, i.e., that the district court should have improper argument brought to its attention and should be afforded the opportunity to stop it or correct it by instructions or otherwise. In this case, defendant not only made no objection to the government's argument at the time it was made, but he also failed to avail himself of post-trial remedies such as those provided under Federal Rule of Criminal Procedure 33. Under these circumstances, the alleged errors will be reviewed only for plain error.
 
 
 27
 Plain error is such error as "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." United States v. Meyers, 952 F.2d 914, 917 (6th Cir.1992) (quoting United States v. Young, 470 U.S. 1, 15, 105 S.Ct. 1038, 1046 (1985)). As we explained in Meyers, "inappropriate remarks by the prosecutor do not alone justify reversal of a criminal conviction in an otherwise fair proceeding, as long as the jury's ability to judge the evidence fairly remains intact." Id. at 917 (quoting United States v. Castro, 908 F.2d 85, 89 (6th Cir.1990)).
 
 
 28
 In this case, the jury's ability to judge the evidence fairly could not have been overborne by any error in the government's argument. The argument was mainly temperate and correct, focusing on the questions of credibility that dominated the case. There was no improper argument "so pronounced and persistent that [it permeated] the entire atmosphere of the trial," Meyers, 952 F.2d at 917, and, therefore, there was no plain error in the government's argument.
 
 B.
 
 29
 Defendant argues that the district court erred in failing to grant him an evidentiary hearing on his motion to suppress. He contends that under Franks v. Delaware, 438 U.S. 154 (1978), an evidentiary hearing was required because the agent-affiant in this case displayed a reckless disregard for the truth by omitting from the affidavit certain discrediting information about the confidential informant. In particular, defendant insists that Agent Scott, the affiant in this case, did not inform the magistrate that the informant was paid $14,500 by the Bureau of Alcohol, Tobacco and Firearms, that the informant had a lengthy criminal record including gun possession charges, and that there was no independent corroboration to substantiate the informant's information. The district court rejected defendant's arguments because it found the informant's reliability and credibility to be established within the affidavit by assertions that his information had proven to be true in previous cases and that it had resulted in the arrest of seven persons, three of whom had already pled guilty. The court concluded that "the Constitution does not require a full-blown trial, evidentiary hearing every time a search warrant is issued." J.A. 53.
 
 
 30
 The question of whether the alleged omission of information concerning an informant's character vitiates a warrant is a question of law subject to de novo review on appeal. See Whitney v. Brown, 882 F.2d 1068, 1071 (6th Cir.1989), and Loudermill v. Cleveland Bd. of Educ., 844 F.2d 304, 308 (6th Cir.), cert. denied, 488 U.S. 941 and 488 U.S. 946 (1988).
 
 
 31
 In United States v. Martin, 920 F.2d 393 (6th Cir.1991), the defendant argued that the agent-affiant "never told the magistrate that his principal informant ... was a person whose veracity was open to serious question." Id. at 398. In rejecting defendant's argument, we distinguished between omissions of potentially impeaching material and inclusions of affirmatively false information.
 
 
 32
 While omissions may not be per se immune from inquiry, the affirmative inclusion of false information in an affidavit is more likely to present a question of impermissible official conduct than a failure to include a matter that might be construed as exculpatory. This latter situation potentially opens officers to endless conjecture about investigative leads, fragments of information, or other matters that might, if included, have redounded to defendant's benefit. The potential for endless rounds of Franks hearings to contest facially sufficient warrants is readily apparent.
 
 
 33
 Id. (quoting United States v. Colkley, 899 F.2d 297, 301 (4th Cir.1990)).
 
 
 34
 In Martin, this court also noted that it is often people involved in criminal activities themselves that have the most knowledge about other criminal activities. As the Ninth Circuit observed:
 
 
 35
 It would have to be a very naive magistrate who would suppose that a confidential informant would drop in off the street with such detailed evidence and not have an ulterior motive. The magistrate would naturally have assumed that the informant was not a disinterested citizen. While the magistrate was not informed of the informant's probity, the magistrate was given reason to think the informant knew a good deal about what was going on at [the residence].
 
 
 36
 Id. at 398-99 (quoting United States v. Strifler, 851 F.2d 1197, 1201 (9th Cir.1988), cert. denied, 489 U.S. 1032 (1989)).
 
 
 37
 There is no reason to believe that the magistrate judge in this case may have been seriously misled by affiant's failure to disclose information about the informant which was only of general impeachment value and had no direct bearing on the substance of the informant's information. Where, as here, the informant's reliability and credibility are otherwise established, defendant bears the very heavy burden of showing how mere impeachment material could be so devastating that its omission constituted a reckless disregard for the truth. Defendant did not carry such a burden in this case, and therefore the district court did not err in refusing to conduct an evidentiary hearing on the basis of defendant's proffers.
 
 C.
 
 38
 Finally, defendant argues that there is insufficient evidence in the record to support his conviction. A defendant claiming insufficiency of the evidence bears a very heavy burden. United States v. Vannerson, 786 F.2d 221, 225 (6th Cir.), cert. denied, 476 U.S. 1123 (1986). The evidence is construed in the manner most favorable to the government, United States v. Green, 548 F.2d 1261, 1266 (6th Cir.1977), and the relevant inquiry is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979).
 
 
 39
 The evidence in this case is ample under the foregoing standards. The firearm in question was found in defendant's room within defendant's residence. Moments before the raid occurred, defendant was seen looking out the window of that very bedroom. The $27,000 in cash found in the safe in his bedroom may have furnished a sufficient motive, in the jury's eyes, for defendant's possession of a weapon, and the jury was free to reject defense testimony that Jens Stendera spent the night in that bedroom and owned the weapon in question.
 
 
 40
 This court has upheld convictions where firearms were found in a defendant's bedroom. United States v. Clark, 928 F.2d 733 (6th Cir.) (upholding conviction under 18 U.S.C. § 924(c) for using a firearm in relation to a drug offense) (per curiam), cert. denied, 112 S.Ct. 144 and 112 S.Ct. 240 (1991). Accord, United States v. McCoy, 781 F.2d 168, 171 (10th Cir.1985) (firearm in defendant's bedroom sufficient to support conviction of felonious possession); United States v. Scarborough, 539 F.2d 331 (4th Cir.1976) (guns found in bedroom sufficient to support conviction for felonious possession), aff'd, 431 U.S. 563 (1977). Viewed in the light most favorable to the government, there is ample evidence to support the jury's verdict in this case.
 
 III.
 
 41
 For the foregoing reasons, the judgment of the district court is AFFIRMED.
 
 
 
 *
 Honorable Avern Cohn, United States District Judge for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 The Supreme Court has recently reaffirmed Abel in Dawson v. Delaware, 60 U.S.L.W. 4197 (U.S. Mar. 9, 1992). Dawson itself is applicable to this case because there the Court decided that a stipulation of defendant's connection with the Aryan Brotherhood, a prison gang, was simply irrelevant to the capital sentencing hearing. The state did not follow through with proof that the Aryan Brotherhood endorsed or committed violent acts against minorities, and thus the stipulation showed only defendant's abstract beliefs. Its admission into evidence, therefore, violated defendant's First Amendment right to freedom of expression
 
 
 [2]
 Although defendant cites Douglas v. Alabama, 380 U.S. 415, 422 (1965), and United States v. Vandetti, 623 F.2d 1144, 1146 (6th Cir.1980), in support of his argument, those cases do not support him