UNITED STATES of America,
Plaintiff–Appellee,

v.

Robert Wayde CRAWFORD, Nickey
Charles Freeman,
Defendants–Appellants.

No. 89–7712.

United States Court of Appeals,
Eleventh Circuit.

July 30, 1990.

William M. Dawson, Birmingham, Ala., for appellants.

L. Dan Turberville, Birmingham, Ala., for Freeman.

Frank W. Donaldson, U.S. Atty., Anthony A. Joseph, Asst. U.S. Atty., Birmingham, Ala., for U.S.

Before KRAVITCH and COX, Circuit Judges, and DYER, Senior Circuit Judge.

DYER, Senior Circuit Judge:

A jury convicted defendants Crawford and Freeman of possession of an unregistered destructive device in violation of Title 26, United States Code, Section 5861(d). They severally appeal their convictions, Freeman contending (1) that to require him to register a firearm or destructive device while he was in a probationary or parole status would require him to incriminate himself; (2) that there was a failure to prove venue; and (3) that he was denied a reduction of the Offense Level Total under the Sentencing Guidelines because he maintained his innocence. Crawford argues that (1) a directed verdict in his favor should have been granted; (2) the prosecutor's cross-examination violated his right to remain silent; and (3) that the sentence imposed is erroneous because the wrong guideline was applied. Both Freeman and

Crawford submit that there was a *Brady* violation because the government failed to produce evidence at their request.

We affirm the convictions of both defendants, and find no error in the sentencing of Freeman. However, we find that Crawford's sentence was erroneously imposed as a result of an incorrect application of the guidelines. We therefore reverse Crawford's sentence and remand for proper sentencing.

### FACTS

On April 10, 1988 Officer Kent E. Jones, of the Graysville, Alabama Police Department, worked his 2:00 p.m. to 10:30 p.m. shift alone. At approximately 8:40 p.m., Jones was in the vicinity of Brookville School Road, a deserted area within the city limits, when he observed a 1978 Ford Granada parked on the road in a wooded area. He approached it with his headlights on bright and saw the driver, later identified as Crawford, standing at the left front of the Granada apparently urinating. Crawford appeared to throw something into the woods. Upon being questioned, Crawford presented his driver's license and told Jones that the car belonged to him. Papers later found in the Granada confirmed this. As Jones walked up to the passenger's side of the Granada to obtain identification from Freeman, he observed Freeman bend forward and then lean back. Jones also saw several syringes and beer cans. Freeman then opened the passenger door approximately six inches, reached under the front seat and said "take this", and rolled out on to the ground what appeared to be a pineapple-type hand grenade.

Freeman got down to the floor board and Crawford got on the ground on the driver's side of the Granada. Jones dove behind a roll of old carpet located about five feet from the Granada. In a matter of seconds the hand grenade exploded. Jones suffered skin bruises. As the result of the explosion, a small metal fragment was found in the parking light and another

fragment was located in the upper portion of the fiberglass panel over the front grill of the patrol car. The paint on the right rear quarter panel of the Granada was marred. Jones arrested both of the defendants. Crawford was submissive and cooperative. Jones handcuffed Freeman and put both of the defendants on the ground.

An inventory and crime scene investigation was conducted. Located outside the right passenger door of the Granada, a hand grenade spoon was found. Inside, another hand grenade spoon was found under the right seat. A hand grenade spoon is a spring-loaded device that is detached from the hand grenade once the pin is pulled. When this occurs there is a three to five second delay before the explosion. Inside the trunk of the Granada a can of Hercules Smokeless Pistol Powder, three-quarters full, was found. The residue on the metal fragments was found to be physically similar to the pistol powder. Also found in the trunk were an R.B. pistol, a .45 caliber semi-automatic, a .22 caliber rifle, and a Rocket Practice .35 mm sub-caliber M73 (Rocket).

A search of the National Firearms Registration and Transfer Record disclosed that no firearm (destructive device) had been registered by either Crawford or Freeman.

We proceed to Freeman's assertions of error.

### *Self–Incrimination Claim*

■ On appeal for the first time Freeman contends that his conviction should be set aside because requiring registration of the firearm he possessed[1] violates his privilege against self-incrimination. We must look to the plain error standard of Fed.R. Crim.P. 52(b) to determine whether the error complained of by Freeman affected his substantial rights.

Freeman submits that, because of his previous felony conviction, under which he was in a probationary status, registration requirements would force him to incrimi-

---

1. Title 26, U.S.C. § 5861(d) provides, in pertinent part, that "[i]t shall be unlawful for any person—to receive or possess a firearm which is not registered to him in the National Firearms Registration and Transfer Record".

nate himself. We disagree. In *United States v. Bowdach,* 458 F.2d 951, 952 (5th Cir.1972) (per curiam) (citing *United States v. Freed,* 401 U.S. 601, 91 S.Ct. 1112, 28 L.Ed.2d 356 (1971)), the court held that the reporting requirement of the National Firearms Act did not violate a defendant's Fifth Amendment privilege against self-incrimination. The court said that the contention by appellant of registration being a violation of this privilege is without merit. In *United States v. Flores,* 753 F.2d 1499 (9th Cir.1985), the court held that the registration requirement did not impinge upon the defendant's privilege of self-incrimination, noting that there is a need to balance the fundamental interest of the individual and that of the general public. It found that there is a difference between "using the privilege as a shield against inquisitorial and unfair government practices and using it as a sword to carve a path through the law of the land". *Id.* at 1503. We find no error, much less plain error, that undermines Freeman's constitutional privilege against self-incrimination.

### Venue

Freeman asserts that there is no proof that the offense occurred in the Northern District of Alabama and thus there was a failure to show that the trial was held in the same district as the offense. This contention is wholly without merit. The evidence clearly establishes that the Brookville School Road, the scene of the offense, was located within the city limits of Graysville, in the Northern District of Alabama.

### Acceptance of Responsibility Guideline

■ Freeman argues that the acceptance of the responsibility provision, Section 3E1.1 [2] of the Guidelines, violates the Fifth and Sixth Amendments because it requires an accused to either confess falsely to his guilt or not exercise his right to testify in his own behalf to avoid an allegation of perjury after conviction based on his acceptance of responsibility. There is no authority to support this position. On the contrary, this court has decided the precise issue adversely to Freeman. In *United States v. Henry,* 883 F.2d 1010 (11th Cir. 1989) (per curiam), this court held that the acceptance of responsibility provision of the federal sentencing guidelines, which permits a sentencing court to reduce an offense by two levels if the defendant accepts personal responsibility for his criminal conduct, does not violate either the Fifth or Sixth Amendment, but merely formalizes and clarifies a tradition of leniency extended to defendants who express genuine remorse and accept responsibility for their wrongs.

Next we proceed to Crawford's assertions of error.

### Insufficiency of Evidence

■ Crawford claims that the evidence was insufficient to support his conviction on a theory of constructive possession of the destructive device. He argues that the evidence was circumstantial, and at best showed no more than that he was present at the scene, but had no knowledge of the existence of the grenade. He relies on *United States v. Shapiro,* 669 F.2d 593, 595 (9th Cir.1982) in which the court held that mere knowledge that a crime is being committed, coupled with presence at the scene is insufficient to show participation in the crime. This case is inapposite because Crawford was not convicted of participation in the crime. The essential elements that the government had to prove beyond a reasonable doubt were that Crawford knowingly possessed the destructive device and that it was not registered as required. There is no dispute that there was such a device and that it was unregistered. Therefore, the only relevant inquiry

---

**2.** Section 3E1.1 of the Guidelines provides:
    (a) If the defendant clearly demonstrates a recognition and affirmative acceptance of personal responsibility for his criminal conduct, reduce the offense level by 2 levels.
    (b) A defendant may be given consideration under this section without regard to wheth-

er his conviction is based upon a guilty plea or a finding of guilt by the court or jury or the practical certainty of conviction at trial.
    (c) A defendant who enters a guilty plea is not entitled to a sentencing reduction under this section as a matter of right.

is whether Crawford constructively possessed it.

Crawford admittedly owned the automobile in which the device and paraphernalia were carried. He and Freeman had been in the car for approximately 12 hours. When he heard Freeman say "take this", Crawford, although he was on the other side of the car, got down on the ground. A fair inference from this can be drawn that Crawford knew of the device and thus expected an explosion. A grenade spoon was found in the front seat of the car and a three-quarters filled can of Hercules Smokeless Pistol Powder was found in the trunk.

■ Possession can be shown by circumstantial as well as direct evidence. *United States v. Montes–Cardenas,* 746 F.2d 771, 778 (11th Cir.1984); *United States v. Smith,* 591 F.2d 1105, 1107 (5th Cir.1979). Possession can be either actual or constructive, *Smith* at 1107, and can be either joint or sole, *United States v. Jones,* 514 F.2d 648 (5th Cir.1975) (per curiam). "In order to establish constructive possession, the government must produce evidence showing ownership, dominion, or control over the contraband itself ... or the vehicle in which contraband is concealed". *Smith* at 1107. All reasonable inferences and credibility choices must be in favor of the jury verdict. *United States v. Pruitt,* 763 F.2d 1256, 1263–64 (11th Cir.), *cert. denied,* 474 U.S. 1084, 106 S.Ct. 856, 88 L.Ed.2d 896 (1985).

Viewing the evidence in a light most favorable to the government, we conclude that a reasonable trier of fact could find that the evidence established guilt of Crawford beyond a reasonable doubt. *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942).

### The Prosecutor's Cross–Examination

■ Crawford argues that his right to remain silent was violated by the prosecutor's cross-examination of him concerning statements he made to the police. Crawford's testimony, while not a direct statement, was an attempt to have the jury draw an inference that a third person, Shane Sexton, was present at the scene, was responsible for placing the grenade in the car, and throwing it at the officer. On cross-examination Crawford was asked whether he made any statement to the police officer that Sexton was present when the incident occurred. The defense objected on the ground that what Crawford did not say was a comment on his right to remain silent. The objection was overruled and Crawford testified that he did tell the officer about Sexton even though his written statement did not mention him. Crawford explained this by saying that he did not put everything in his statement because he was drunk at the time.

We reject Crawford's claim that there was any prosecutorial misconduct in the exchange that took place. The written statement was properly in evidence. The questions concerning Crawford's failure to tell police the same story he told at trial was permissible impeachment. *Brogdon v. Butler,* 838 F.2d 776, 778–81 (5th Cir.1988). He was afforded the right to, and did attempt to, explain his reason for the failure to mention Sexton in his written statement. There the matter ends.

### The Sentence Imposed

Crawford challenges his sentence as the result of an incorrect application of the federal sentencing guidelines. He contends that there is no factual basis for including in his guideline computation the base offense level for attempted murder and the specific offense characteristic of discharging a firearm.

The district court adopted the Offense Level Computation in the Presentence Report which sets forth in pertinent part:

The guideline for a 26 U.S.C. 5861(d) offense is found in Section 2K2.2 of the guidelines. That section contains a cross reference which states that "if the defendant used the firearm in committing or attempting another offense, apply the guideline for such other offense...." The relevant conduct section of the guidelines (1B1.3(a)(1)) justifies application of the cross reference to Crawford although it was Freeman who actually

threw the grenade at the police officer. Therefore, using the cross reference, we are referred to guideline section 2A2.1 (Assault) which has a base offense level of 20.

Specific Offense Characteristics: Section 2A2.1(b)(2)(A) increases the base level offense by 5 points if a firearm was discharged.

Victim Related Adjustment: Guideline section 3A1.2 provides an increase of 3 levels if the victim was a law enforcement officer.

.     .     .     .     .     .

Total Offense Level *28*.

The district court found that Crawford "used a firearm or aided and abetted the use of a firearm, namely, a hand grenade, in committing or attempting to commit the offense of attempted murder." (R4–322). The crucial issue is therefore whether a factual basis existed for the imposition of Crawford's sentence.

■■■ We must uphold the sentence unless it was "imposed as a result of an incorrect application of the sentencing guidelines," or was "outside the range of the applicable sentencing guideline, and is unreasonable." *United States v. Buenrostro*, 868 F.2d 135, 136 (5th Cir.1989). Whether sufficient facts exist is a factual issue subject to review under the clearly erroneous standard. *United States v. Wilson*, 884 F.2d 1355 (11th Cir.1989); *United States v. Spraggins*, 868 F.2d 1541 (11th Cir.1989) (per curiam).

■■■ There is no evidence that Crawford used a firearm, nor do we find any evidence to support a conviction of aiding and abetting of Freeman in his assault on the police officer. While there may be joint possession of a firearm, as we have found *supra*, we find no evidence that Crawford in some way associated himself with the attempted murder of officer Jones, or that he wished to bring it about, and that he sought by his actions to make it succeed. *United States v. Thomas*, 676 F.2d 531, 535 (11th Cir.1982); *United States v. Barker*, 735 F.2d 1280, 1281 (11th Cir.), *cert. denied*, 469 U.S. 933, 105 S.Ct. 329, 83

L.Ed.2d 266 (1984). "[T]he vital element to be proven is that the aider and abettor shared in the principal's essential criminal intent." *United States v. Campa*, 679 F.2d 1006, 1010 (1st Cir.1982).

It is uncontradicted that Crawford's encounter with the police was purely accidental with no intent on his part to bring about the meeting. While Crawford was standing in front of the car there was an unplanned spontaneous action by Freeman in tossing the grenade. There was no evidence that there was a plan or concert of action involving Crawford with the assault by Freeman. The finding of fact by the district court that Crawford aided and abetted Freeman in an attempted murder of a police officer is clearly erroneous. It follows that the trial court incorrectly applied the sentencing guidelines.

### Assertion of Brady Violation

Both Freeman and Crawford contend that the government failed to disclose information concerning the firearms found in the trunk of Crawford's car, in violation of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). They both maintain that Sexton was the real culprit who tossed the grenade at officer Jones, and that Sexton had placed the other firearms in the trunk. It is argued that if the firearms could have been traced to Sexton, it would have added credibility to the defense. The denial of this exculpatory information, it is contended, is a violation of *Brady*.

Prior to trial, the government advised both defendants that the firearms, pistol powder, 35 mm sub-caliber rocket and brass knuckles would be made available for inspection. Neither defendant called for their production. Further, Crawford, while in police custody, indicated that the firearms were not his, but belonged to Freeman. Later, he recanted and said they belonged to him. The government also informed the defendants that one of the firearms had been traced as stolen, but that there was no tracing information available concerning the other firearms. None of the firearms found in the trunk were offered in evidence by the government, as

they were not relevant to the pending charges. The defendants knew of the whereabouts of Sexton and could have subpoenaed him to identify the other firearms if they had so desired.

To sustain a violation of *Brady*, it must be shown "(1) that the prosecution suppressed evidence (2) that was favorable to [the defendants] or exculpatory and (3) that the evidence was material." *Delap v. Dugger*, 890 F.2d 285, 298 (11th Cir.1989). None of these essential elements was shown by either defendant. Clearly, there was no suppression of the firearms in the trunk, and tracing information so far as the government could ascertain was disclosed. Defense counsel were in as good a position as the prosecutor to learn more about the firearms. *United States v. Meros*, 866 F.2d 1304, 1309 (11th Cir.) (per curiam), *cert. denied,* — U.S. ——, 110 S.Ct. 322, 107 L.Ed.2d 312 (1989). We find no merit to this contention.

### *Conclusion*

The convictions of Freeman and Crawford are AFFIRMED. The sentence of Freeman is AFFIRMED. Crawford's sentence is VACATED and his case is REMANDED for resentencing.