[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 09-10155
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
DECEMBER 17, 2009
THOMAS K. KAHN
CLERK

D. C. Docket No. 08-20367-CR-WPD

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

DONAVEON LIGHTBOURN,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(December 17, 2009)

Before TJOFLAT, WILSON and FAY, Circuit Judges.

PER CURIAM:

Donaveon Lightbourn appeals the district court's denial of his motion to suppress, as well as his conviction and sentence for possession of a firearm and ammunition by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e)(1). Lightbourn argues that (1) the evidence found in the vehicle in which he was sitting was seized during an unlawful search incident to arrest; (2) certain incriminating statements should have been excluded as fruit of the poisonous tree; (3) there was insufficient evidence to support his conviction; and (4) the district court violated his Fifth and Sixth Amendment rights by enhancing his sentence based on prior convictions that were not alleged in the indictment or found by a jury. For the reasons set forth below, we affirm.

## I.

Lightbourn was charged with possession of a firearm and ammunition by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e)(1), to which he pled not guilty. Lightbourn filed a motion to suppress the firearm, ammunition, a baggie of marijuana, and certain statements he made to authorities, asserting that this evidence was obtained as a result of an illegal detention, illegal arrest, and illegal vehicle search.

At the suppression hearing, Tom Wever, an officer with the Miami-Dade Police Department, testified that, on January 23, 2008, he was driving in his patrol

car when he saw a flash out of the corner of his eye and heard what he believed to be a gunshot. The gunshot came from the area of two vehicles – one vehicle that was traveling southbound and another vehicle that was parked on the side of the road facing the wrong direction. Wever approached the parked vehicle, turned on his high beams, and parked his patrol car in front of the parked vehicle. Wever observed three individuals in the car and saw that the front passenger side window was rolled down. Wever noted that, when he first approached the vehicle, the front passenger was "leaning down," and Wever thought that he "was messing with something on the floorboard." Wever approached the passenger side window and asked Lightbourn, the front passenger, who had fired the shot. Lightbourn informed Wever, and the driver confirmed, that the car that had driven past them had fired the shot.

Wever removed Lightbourn from the vehicle and patted him down for weapons, at which point he observed a small bag of marijuana on the front passenger seat. Wever arrested Lightbourn for possession of marijuana and placed him in the back of his patrol car. Wever then returned to the vehicle to "check the area where [he] saw Mr. Lightbourn reaching down." Under the front passenger seat, Wever discovered a firearm. He explained that the barrel of the firearm was "pointing toward the back seat and the handle of the gun was pointing towards the

3

front of the car." Wever discovered that there were five bullets inside the gun and one spent casing.

Wever transported Lightbourn to the Northside District police station. He explained that, "before we g[o]t to the station, we read him his rights from my card." Lightbourn told Wever, "[j]ust take me to jail." Wever asked Lightbourn about the firearm, but Lightbourn did not say anything about it. Once they arrived at the station, Wever prepared paperwork. On the way to the jail, Lightbourn told Wever that

> he had the gun because he has a lot of enemies in that area, and he has been shot multiple times, and he saw the car pass by. He thought they might try to shoot him. And that's when he pulled the gun out. He said that the car passed by without anything happening. So he went to put the gun back and it went off by accident.

On cross-examination, Wever acknowledged that he did not mention in his arrest affidavit or incident report that a silver car drove past the parked vehicle, that he saw a flash out of the corner of his eye, or that two other individuals were inside the parked vehicle. He pointed out that he did write in the incident report and arrest affidavit that "a shot was fired." He stated that he searched "the area where Mr. Lightbourn was sitting."

Wever testified that he did not question Lightbourn at the scene or on the

4

way to the station.  He stated that he informed Lightbourn of his *Miranda*[1] rights inside the patrol car.  Wever stated that Lightbourn responded that he understood his rights and never waived them.  When Wever asked Lightbourn about the gun, Lightbourn "just said take him to jail."  Wever did not reengage Lightbourn after completing the paperwork at the station.  Instead, Lightbourn "began talking about the reason for having the gun."  Wever estimated that it took him "at least 45 minutes" to complete the paperwork.

The district court denied Lightbourn's motion to suppress, finding that Wever's testimony was credible and that Weaver was justified in investigating the parked vehicle and conducting a pat-down search of Lightbourn after seeing Lightbourn lean down in the passenger seat.  It noted that Wever was authorized to conduct a search incident to arrest after he observed the marijuana and placed Lightbourn under arrest.  Finally, it found that Lightbourn made incriminating statements after reinitiating the conversation with Wever as they left the police station.

At trial, Wever testified that he was driving in his patrol car at approximately 11:00 p.m. on January 23, 2008, when he saw a flash out of the corner of his eye and heard a bang that sounded like a gunshot coming from the

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966).

area of a southbound car and a vehicle parked on the side of the road facing the wrong direction. Wever radioed to other officers that he "had a shot fired in the area," approached the vehicle, turned on his high beams, and saw two occupants in the front of the vehicle and one occupant in the back. Wever stated that he "saw the front passenger reach down like he was messing with something or trying to either retrieve or conceal something underneath the floorboard." Wever noticed that the front passenger window was rolled down.

Wever asked Lightbourn, the front passenger, to step out of the vehicle and patted him down for weapons, at which point he saw a small bag of marijuana on the seat on which Lightbourn had been sitting. Wever handcuffed Lightbourn and placed him in the back of his patrol car. Wever then returned to the vehicle and "looked in the area that [Lightbourn] was sitting where [Wever] saw him reaching." Wever located a firearm underneath the front passenger seat. He stated that the firearm would have been visible to someone entering the front passenger seat. He stated that the gun was flush with the seat—"[i]t wasn't really far back and it wasn't out on the floorboard." He stated that there were six bullets in the firearm, although one of the rounds had already been fired so that only the casing was left. Wever explained that he "got down on the floorboard and used [a] flashlight to look completely under the [front passenger] seat." He stated that it did

6

not appear that an object could have passed from the rear of the vehicle to where the gun was found underneath the seat. He also noted that there was a center console between the driver's side and the front passenger side of the vehicle. He stated that, based on his inspection of the vehicle, the firearm would have had to be placed under the seat by the front seat passenger.

Wever transported Lightbourn to the Northside police station and, before he exited the vehicle, he read Lightbourn his *Miranda* rights. Lightbourn told Wever that he understood his rights and said "[j]ust take me to jail." Wever then took Lightbourn inside the station and began preparing paperwork, including an arrest affidavit and offense incident report. He stated that the paperwork took about 45 minutes to complete. During the completion of the paperwork, Lightbourn provided biographical information, but did not make any further statements. As Lightbourn was being released to be transported to the county jail, he told Wever, "[l]ook, I only have that gun for my protection because I got a lot of enemies in that area" and "[h]e saw the car approach them and he pulled the gun out because he thought maybe the car was going to shoot at them – at him. He said when the car passed without anything happening, he went to put the gun back and it went off accidentally."

On cross-examination, Wever explained that he did not include in his

paperwork Lightbourn's statements regarding his reasons for having the firearm because he had already completed the paperwork when Lightbourn made the statements. He noted that he included Lightbourn's statement in a supplemental report written three months after Lightbourn's arrest. Wever explained that he planned to tell prosecutors about Lightbourn's statements when he met with them to discuss the case.

On re-cross, Wever explained that he usually met with prosecutors to discuss cases within a week of an arrest, but that the meeting in this case was delayed and the case eventually was transferred to federal court.

John Webb, a Special Agent with the Bureau of Alcohol, Tobacco, Firearms, and Explosives, was qualified as an interstate nexus expert. He testified that the firearm seized from the vehicle in this case had traveled in interstate commerce because the manufacturer did not have a manufacturing plant in the state of Florida. He stated that the bullets found inside the firearm also had traveled in interstate commerce.

The parties stipulated that Lightbourn had been convicted of a felony prior to January 23, 2008. The jury found Lightbourn guilty of being a convicted felon in possession of a firearm and ammunition.

The presentence investigation report ("PSI") initially set Lightbourn's base

offense level at 24, pursuant to U.S.S.G. § 2K2.1(a)(2).  However, it noted that Lightbourn was considered a career offender under 18 U.S.C. § 924(e) and, therefore, was subject to an enhanced offense level of 33, pursuant to U.S.S.G. § 4B1.4(b)(3)(B).  Lightbourn did not qualify for any additional adjustments, so his total offense level remained 33.  Because Lightbourn was a career offender, he was placed in criminal history category VI, which, when combined with offense level 33, yielded a guideline imprisonment range of 235 to 293 months.  Neither the government nor Lightbourn filed objections to the PSI.

At the sentencing hearing, Lightbourn stated that he was in agreement with the guideline calculations set forth in the PSI and asked the court to sentence him at the low end of the applicable guideline range.  The court noted that Lightbourn qualified as a career offender and, therefore, was subject to a statutory minimum of 15 years' imprisonment.  It stated that it had considered the 18 U.S.C. § 3553(a) sentencing factors and determined that a sentence at the high-end of the guideline range was appropriate, in light of Lightbourn's significant criminal history, and it sentenced him to 293 months' imprisonment, to be followed by 5 years' supervised release.  Neither party objected to the sentence.

## II.

*Failure to Suppress Firearm and Ammunition*

Rulings on motions to suppress evidence constitute mixed questions of law and fact. *United States v. LeCroy*, 441 F.3d 914, 925 (11th Cir. 2006). We accept the district court's findings of fact unless they are clearly erroneous, but review *de novo* the application of law to those facts. *Id.* We will defer to the district court's credibility determinations, unless the district court's "understanding of the facts appears to be 'unbelievable.'" *United States v. Ramirez-Chilel*, 289 F.3d 744, 749 (11th Cir. 2002).

To conduct an investigatory stop, an officer must "have a reasonable, articulable suspicion based on objective facts that the person has engaged in, or is about to engage in, criminal activity." *United States v. Lindsey*, 482 F.3d 1285, 1290 (11th Cir. 2007). Reasonable suspicion is "considerably less than proof of wrongdoing by a preponderance of the evidence" and less than probable cause. *United States v. Sokolow*, 490 U.S. 1, 7, 109 S.Ct. 1581, 1585, 104 L.Ed.2d 1 (1989). Nevertheless, the officer must articulate "some minimal level of objective justification." *Id.*

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. In general, unless there is consent, police officers must obtain a warrant supported by probable cause to justify a search

10

under the Fourth Amendment. *United States v. Magluta*, 418 F.3d 1166, 1182 (11th Cir. 2005). However, "[o]nce an officer has legitimately stopped an individual, the officer can frisk the individual so long as a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *United States v. Hunter*, 291 F.3d 1302, 1306 (11th Cir. 2002) (quotation omitted).

The Supreme Court also has held that, once a suspect is under lawful arrest, law-enforcement officers may search areas within the immediate control of the suspect to prevent him from obtaining a weapon or destroying evidence. *Chimel v. California*, 395 U.S. 752, 762-63, 89 S.Ct. 2034, 2040, 23 L.Ed.2d 685 (1969). Recently, the Supreme Court clarified that officers are authorized "to search a vehicle incident to a recent occupant's arrest only when the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search" or if "it is reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle." *Arizona v. Gant*, 556 U.S. __, __ 129 S.Ct. 1710, 1719, 173 L.Ed.2d 485 (2009) (quotation omitted). If the offense of arrest supplies a basis for a search incident to arrest, the officer may search "the passenger compartment of an arrestee's vehicle and any containers therein." *Id.*

As an initial matter, it appears that Lightbourn may have lacked standing to

11

challenge the search of the vehicle because he was merely a passenger and did not own the vehicle. However, the government has waived the issue of standing by failing to raise the issue in the district court and, instead, addressing the merits of Lightbourn's Fourth Amendment claims. *See United States v. Gonzalez*, 71 F.3d 819, 828 n.18 (11th Cir. 1996) (determining that the government waived the issue of standing because it "declined to press th[e] standing issue before the district court"). Accordingly, we address the merits of Lightbourn's Fourth Amendment claims.

In evaluating Lightbourn's Fourth Amendment claims, we accept the district court's determination that Wever's testimony was credible because nothing in the record renders his testimony "unbelievable." *Ramirez-Chilel*, 289 F.3d at 749. Although Lightbourn challenges Wever's testimony that he heard a gunshot on the night of Lightbourn's arrest, Lightbourn offered no evidence in support of this position. Furthermore, Wever testified that his arrest affidavit and incident report, written on the night of Lightbourn's arrest, reflected that "a shot was fired" from the area in which the car was parked.

Wever's testimony at the suppression hearing established that he had a "reasonable, articulable suspicion" that the occupants of the parked vehicle were engaged in criminal activity, specifically, the discharge of a firearm, based on his

12

witnessing a flash out of the corner of his eye and hearing a gunshot coming from the area of the parked vehicle. *Lindsey*, 482 F.3d at 129. Wever also was authorized to conduct a pat-down search of Lightbourn because, when Wever approached the vehicle, he observed Lightbourn lean down in his seat. This action, coupled with the gunshot Wever heard shortly before arriving at the vehicle, would cause a reasonably prudent man to believe that his safety or the safety of others was in danger. *See Hunter*, 291 F.3d at 1306. As Wever was patting down Lightbourn, he observed marijuana in plain view on Lightbourn's seat. At this point, Wever had probable cause to arrest Lightbourn for marijuana possession.

Finally, although Lightbourn was secured in the back of Wever's police cruiser at the time of the vehicle search, the search was a lawful search incident to arrest because it was "reasonable to believe that evidence relevant to [Lightbourn's possession of marijuana] might be found in the vehicle." *See Gant*, 556 U.S. at __, 129 S.Ct. at 1719. Because Lightbourn was arrested for possession of marijuana, and because Wever had already observed suspected marijuana on the passenger seat, it would be reasonable to believe that additional marijuana or other drug paraphernalia would be found inside the vehicle. Furthermore, Wever testified that his search was confined to the passenger compartment of the vehicle. *See Gant*, 556 U.S. at __, 129 S.Ct. at 1719 (holding that, if it is reasonable to believe that

13

evidence of the offense of arrest will be found in the vehicle, officers may search "the passenger compartment of an arrestee's vehicle and containers therein"). Accordingly, the district court did not err in refusing to suppress the firearm found during the lawful search incident to arrest.

*Failure to Suppress Statements*

Generally, any evidence obtained by unconstitutional searches and seizures is inadmissible in court. *See Mapp v. Ohio*, 367 U.S. 643, 655, 81 S.Ct. 1684, 1691, 6 L.Ed.2d 1081 (1961). In addition to the illegally obtained evidence, the defendant may suppress incriminating evidence that was derived from that primary evidence, *i.e.*, "fruit of the poisonous tree." *United States v. Terzado-Madruga*, 897 F.2d 1099, 1112-13 (11th Cir. 1990).

Law enforcement must issue *Miranda* warnings when a subject is both "in custody" and under "interrogation" by police officers. *United States v. Castro*, 723 F.2d 1527, 1530 (11th Cir. 1984). The term "interrogation" refers to express questioning or its functional equivalent—"any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Rhode Island v. Innis*, 446 U.S. 291, 309 n.5, 100 S.Ct. 1682, 1694 n.5, 64 L.Ed.2d 297 (1980). The Supreme Court recognized that not "all statements

14

obtained by the police after a person has been taken into custody are to be considered the product of interrogation." *Id.* at 299, 100 S.Ct. at 1689. Any statement given freely and voluntarily is admissible in evidence. *Id.* at 300, 100 S.Ct. at 1689. Additionally, statements that are voluntary and unresponsive to the questions posed are not protected by *Miranda*. *See Castro*, 723 F.2d at 1532.

Because the vehicle search was a lawful search incident to a valid arrest, the "fruit of the poisonous tree" doctrine does not apply to Lightbourn's subsequent incriminating statements. *See Mapp*, 367 U.S. at 655, 81 S.Ct. at 1691; *Madruga*, 897 F.2d at 1112-13. Furthermore, Wever testified that Lightbourn made his statements spontaneously, rather than in response to any remark made or question asked by Wever. According to Wever's testimony, at least 45 minutes had passed between the time that Wever asked Lightbourn about the firearm and the time that Lightbourn made this statement. In the interim, Wever had filled out paperwork and Lightbourn had provided various biographical information to Wever. Accordingly, because Lightbourn's incriminating statements were made spontaneously, rather than during an interrogation, the district court did not err in denying Lightbourn's request to suppress the statements.

*Sufficiency of the Evidence*

We review *de novo* challenges to the sufficiency of the evidence in criminal

15

cases. *United States v. Futrell*, 209 F.3d 1286, 1288 (11th Cir. 2000). "[A]n appellate court must view the evidence in the light most favorable to the government, drawing all reasonable inferences and credibility determinations in favor of the verdict." *United States v. Simpson*, 228 F.3d 1294, 1299 (11th Cir. 2000). "A conviction must be upheld unless the jury could not have found the defendant guilty under any reasonable construction of the evidence." *United States v. Byrd*, 403 F.3d 1278, 1288 (11th Cir. 2005).

"To obtain a conviction for being a felon in possession of a firearm the [government] must prove beyond a reasonable doubt that the defendant was (1) in knowing possession of a firearm, (2) a convicted felon, and (3) that the firearm affected interstate commerce." *United States v. Glover*, 431 F.3d 744, 748 (11th Cir. 2005) (quotation omitted). "Possession can be shown by circumstantial as well as direct evidence." *United States v. Crawford*, 906 F.2d 1531, 1535 (11th Cir. 1990). "Possession can be either actual or constructive and can be either joint or sole." *Id.* (citation omitted). "Constructive possession exists when a defendant has ownership, dominion, or control over an object itself or dominion or control over the premises or the vehicle in which the object is concealed." *United States v. Hernandez*, 433 F.3d 1328, 1333 (11th Cir. 2005).

On appeal, Lightbourn challenges the sufficiency of the government's

evidence only as it pertains to the "knowing possession" of the firearm and ammunition. Thus, we do not address the other elements of the offense. *See United States v. Curtis*, 380 F.3d 1308, 1310 (11th Cir. 2004) (recognizing that issues not argued on appeal are deemed abandoned and waived).

The evidence presented at trial was sufficient to establish that Lightbourn had either actual or constructive possession of the firearm and ammunition. Wever testified that Lightbourn confessed to him that he possessed the firearm for his own protection and that the firearm accidentally discharged. Thus, Lightbourn's statement established that he knowingly possessed both the firearm and the ammunition. Although Lightbourn questions the credibility of Wever's testimony, Lightbourn presented no evidence at trial to directly contradict Wever's testimony that Lightbourn confessed, and Wever explained that the delay in amending his paperwork to reflect Lightbourn's statements was caused by a postponed meeting with state prosecutors and the subsequent transfer of the case into the federal system. Because we must draw all reasonable credibility determinations in favor of the verdict, we accept Wever's testimony as true. *See Simpson*, 228 F.3d at 1299.

Even in the absence of Lightbourn's confession, circumstantial evidence established that Lightbourn constructively possessed the firearm. Wever testified

17

that (1) the firearm was found underneath the front passenger seat, in which Lightbourn had been sitting; (2) the handle of the firearm was facing the front of the vehicle; and (3) it would have been impossible for an object in the rear or the driver's side of the vehicle to slide underneath the front passenger seat. Furthermore, Wever observed Lightbourn lean forward in his seat as if he were trying to conceal something as Wever approached the vehicle. Accordingly, the evidence was sufficient to establish that Lightbourn knowingly possessed the firearm and ammunition.

*Sentencing Enhancements*

Objections to sentencing issues that are not raised before the district court are reviewed for plain error. *See United States v. Bonilla*, 579 F.3d 1233, 1238 (11th Cir. 2009). To prevail under a plain-error standard, the defendant must establish that (1) an error occurred, (2) the error is plain, and (3) the error affected substantial rights. *United States v. Olano*, 507 U.S. 725, 732, 113 S.Ct. 1770, 1776, 123 L.Ed.2d 508 (1993). Once these elements are established, this Court may correct the error only if it "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *Id.*

Lightbourn was sentenced pursuant to § 4B1.4(a), which states, "[a] defendant who is subject to an enhanced sentence under the provisions of 18

18

U.S.C. § 924(e) is an armed career criminal." U.S.S.G. § 4B1.4(a). Section 924(e) states, in relevant part, that "a person who violates section 922(g) of this title and has three previous convictions by any court . . . for a violent felony or a serious drug offense, or both . . . shall be . . . imprisoned not less than fifteen years." 18 U.S.C. § 924(e)(1).

In *Almendarez-Torres*, the Supreme Court held that prior convictions "relevant only to the sentencing of an offender found guilty of the charged crime" do not need to be charged in an indictment or proved to a jury beyond a reasonable doubt. *Almendarez-Torres*, 523 U.S. 224, 239-47, 118 S.Ct. 1219, 1229-33, 140 L.Ed.2d 350 (1998) (holding that the factual issue of whether a defendant has been convicted of an "aggravated felony" for 8 U.S.C. § 1326(b)(2) enhancement purposes is not required to be alleged in the indictment). The Supreme Court, in deciding *Apprendi*, stated explicitly that its decision did not question the validity of its holding in *Almendarez-Torres*. *See Apprendi v. New Jersey*, 530 U.S. 466, 489-90, 120 S.Ct. 2348, 2362, 147 L.Ed.2d 435 (2000) (holding that it is a Sixth Amendment violation for a sentencing court to enhance a defendant's sentence beyond the statutory maximum based on facts that were not proven to a jury beyond a reasonable doubt or expressly admitted by the defendant).

We reiterated that the holding in *Almendarez-Torres* was not affected by

19

*Apprendi* or the subsequent decision in *United States v. Booker*, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005) (holding that mandatory enhancements under the Sentencing Guidelines must be based on facts found by a jury or admitted by the defendant), and that a district court does not err when it uses prior convictions to enhance a defendant's sentence. *United States v. Shelton*, 400 F.3d 1325, 1329 (11th Cir. 2005). We also have held that prior convictions did not have to be found by a jury in order to be used to enhance a sentence pursuant to § 924(e). *United States v. Greer*, 440 F.3d 1267, 1273-76 (11th Cir. 2006). Thus, because binding precedent, particularly the holdings in *Almendarez-Torres* and *Greer*, specifically permit the district court to enhance sentences based on prior convictions that were not proven to a jury beyond a reasonable doubt or expressly admitted by the defendant, Lightbourn has failed to show that the district court plainly erred in enhancing his sentence under § 924(e). Accordingly, we affirm Lightbourn's conviction and sentence.

**AFFIRMED.**