[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUGUST 18, 2010
JOHN LEY
CLERK

No. 08-12829

_____

D. C. Docket No. 05-00558-CR-4-WSD-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JOE LOUIS LOPEZ,
a.k.a. Jolly,

Defendant-Appellant,

JESUS HECTOR FLORES,
a.k.a. Cain,

Defendant.

_____

Appeals from the United States District Court
for the Northern District of Georgia

_____

(August 18, 2010)

Before TJOFLAT and BARKETT, Circuit Judges, and BARZILAY,[*] Judge.

PER CURIAM:

On November 15, 2005, agents of the Drug Enforcement Administration ("DEA") and officers of the Fulton County, Georgia Special Weapons and Tactics ("SWAT") team arrested Joe Louis Lopez, Roberto Garcia, and Romero Roel Martinez. Later that day, the agents arrested Jesus Hector Flores and Luis Fernando Trevino. On December 15, 2005, a Northern District of Georgia grand jury returned a ten-count indictment[1] against these five arrestees and Florentino Villanueva-Castillo. Lopez, the appellant here, was charged in Counts 1, 6, 7, and 9. Count 1 charged all defendants with violating 21 U.S.C. § 846 by conspiring to possess with intent to distribute at least five kilograms of cocaine from April 2005 to November 15, 2005, in violation of 21 U.S.C. § 841(a). Count 6 charged Lopez, Martinez, and Villanueva with possession with intent to distribute and distribution of at least five kilograms of cocaine on November 15, 2005, in violation of § 841(a). Count 7 charged Flores, Martinez, Lopez, and Garcia with possession with intent to distribute at least five kilograms of cocaine on November

[*] Honorable Judith M. Barzilay, United States Court of International Trade Judge, sitting by designation.

[1] It was a superseding indictment, which we refer to for convenience as the indictment.

15, 2005, in violation of § 841(a). Count 9 charged Lopez with possession of a firearm in furtherance of a drug trafficking crime and using, carrying, and brandishing said firearm in violation of 18 U.S.C. §§ 924(c)(1)(A)(i), 924(c)(1)(A)(ii), and 2.

Garcia, Martinez, Trevino, and Villanueva-Castillo pled guilty to several counts of the indictment. Lopez and Flores elected to go to trial; it began on January 7, 2008. Garcia and Trevino testified against them as prosecution witnesses. On January 11, the jury found Flores and Lopez guilty as charged.

On May 7, 2008, the district court sentenced Lopez to concurrent prison terms of 292 months on Counts 1, 6, and 7, and a consecutive prison term of 60 months on Count 9. Flores was sentenced on July 11, 2008, to concurrent prison terms of 400 months on Counts 1, 4, and 7, and 240 months on Count 2, and a consecutive prison term of 60 months on Count 10.[2] Flores appealed his convictions and sentences, but voluntarily dismissed the appeal on November 30, 2009. Lopez also appealed; it is his appeal that we decide today. He challenges his conviction on Count 9 and his sentences on Counts 1, 6, and 7.

I.

---

[2] The district court sentenced the remaining defendants to the following prison terms on multiple counts: Garcia 177 months, Martinez 322 months, Trevino 177 months, and Villanueva-Castillo 132 months.

3

In 2002, Flores was conducting a highly successful cocaine operation in Memphis, Tennessee. Garcia and Martinez began working for him that year; Trevino joined them within a year or so.[3]

The Memphis operation was Flores's focus until early 2005, when one of Flores's primary customers was arrested. At this point, Flores set up shop in Atlanta, Georgia. Martinez, Garcia, Trevino, and Lopez came to Atlanta to help him. The four men lived in a "stash house," located at 5040 Erin Road in Atlanta. They would receive cocaine in trucks from Mexico and store it. Per Flores's directions, they would deliver the cocaine to Flores's customers and collect cash payments in return. They communicated with Flores multiple times throughout the day. Although Martinez, Garcia, Trevino, and Lopez mixed responsibilities, each had primary responsibilities. Martinez served as Flores's lieutenant and had the primary responsibility of communicating with Flores. Lopez had the primary responsibility of meeting the trucks delivering the cocaine, taking the cocaine to customers, and collecting payments from customers. Garcia and Trevino had the primary responsibility of counting and processing the payments that Lopez collected.

---

[3] Lopez briefly worked for Flores in Memphis as well.

From June 2005 until the November 15, 2005 arrests, DEA agents performed a series of court-authorized wiretaps, which, by November 11, 2005, included Martinez's phones and a cell phone Flores used. On November 11, Martinez received an instruction to deliver 20 kilograms of cocaine to "Tejano." Lopez prepared the cocaine and delivered it that night, under the agents' surveillance, and received a cash payment. The wiretaps indicated that Lopez also made a delivery that night of 20 kilograms of cocaine to "the Mailman," who gave him $200,000 for an earlier delivery.

On November 15, DEA agents and members of the SWAT team raided the stash house at 5040 Erin Road. A SWAT team officer, while climbing the stairs, saw a man standing outside an upstairs bedroom and pointing a gun in his direction. The officer fired three rounds at the man and fell backward down the stairs. Although the DEA agents initially identified the man holding the gun as Lopez, it was actually Garcia. The agents arrested Lopez, Garcia, and Martinez in the house.

The agents found three guns—two semiautomatic pistols and a semiautomatic assault rifle—in the stash house, as well as loaded ammunition clips for the pistols, boxes of ammunition for the assault rifle, 120 kilograms of cocaine, $1.5 million cash, and cellular phones that were intercepted during the

wiretaps. According to Garcia's testimony, everyone living in the stash house would have been able to use the guns, which were there "[f]or protection of the house, [to] make sure we didn't get robbed, anything of that nature." Trevino and Flores were arrested later that day.

## II.

Lopez appeals his conviction on Count 9. He argues that the evidence was insufficient to convict him on that count and seeks a judgment of acquittal.

Count 9 of the indictment charged Lopez as follows:

> On or about November 15, 2005, in the Northern District of Georgia, the defendant,
> JOE LOUIS LOPEZ, a.k.a. JOLLY;
> aided and abetted by others known and unknown to the grand jury, did knowingly possess a firearm in furtherance of a drug trafficking crime for which the defendant may be prosecuted in a court of the United States, that is, a violation of Title 21, United States Code, Sections 841(a)(1) and 846 as set forth in Counts One and Seven of this Indictment, and did use, carry, and brandish said firearm during and in relation to said drug trafficking crime; all in violation of Title 18, United States Code, Section 924 (c)(1)(A)(i), 924 (c)(1)(A)(ii), and 2.

Section 924(c)(1)(A) provides in relevant part:

> [A]ny person who, during and in relation to . . . [a] drug trafficking crime . . . for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such . . . drug trafficking crime—
> (i) be sentenced to a term of imprisonment of not less than 5 years;

(ii) if the firearm is brandished, be sentenced to a term of imprisonment of not less than 7 years; and
(iii) if the firearm is discharged, be sentenced to a term of imprisonment of not less than 10 years.[4]

Prior to trial, Lopez moved the district court pursuant to Brady v. Maryland, 373 U.S. 83, 83 S. Ct. 1194 (1963), to order the Government to provide him with information pertinent to Count 9, in light of the Government's admission that it was Garcia, not Lopez, who pointed the gun at the officer during the stash house raid. At the hearing on the motion, the prosecutor gave defense counsel the information: Count 9 related to the possession of all three guns found at the stash house, not just the pistol Garcia brandished. The district court then denied Lopez's motion as moot.

The district court began the jury charge conference following the second-to-last day of testimony and resumed it in the morning before the last day of testimony. At the charge conference, the Government conceded that there was no evidence showing that Lopez used or brandished a firearm on November 15. The parties agreed to redact the "use" and "brandish" language from the indictment and strike that language from the jury instruction on Count 9, leaving the offenses

---

[4] Section 924(c)(2) defines "drug trafficking crime" for purposes of the subsection as "any felony punishable under the Controlled Substances Act (21 U.S.C. 801 et seq.), the Controlled Substances Import and Export Act (21 U.S.C. 951 et seq.), or chapter 705 of title 46."

of carrying a firearm in relation to a drug trafficking crime or possessing the firearm in furtherance of the crime.[5]

At the close of the Government's case in chief, Lopez moved the court pursuant to Federal Rule of Criminal Procedure 29 for a judgment of acquittal on all counts. Specifically on Count 9, he argued that the evidence was insufficient to establish the carrying and possessing allegations. The court granted Lopez's motion only with respect to the brandishing aspect of the Count 9 offense, which the parties had already agreed to strike from the indictment, and denied his motion in all other respects. Lopez renewed his Rule 29 motion at the close of all the evidence; it too was denied. Lopez now contends that the court erred in denying the motion as to the remaining allegations of the Count 9 charge.

We review de novo whether there is sufficient evidence to sustain a conviction. United States v. Gunn, 369 F.3d 1229, 1234 (11th Cir. 2004) (per curiam) (citing United States v. Tarkoff, 242 F.3d 991, 993 (11th Cir. 2001)). In conducting this review, we "view[] the evidence in the light most favorable to the government, reversing only if no reasonable trier of fact could have found guilt beyond a reasonable doubt." Id. (citing Tarkoff, 242 F.3d at 993). To sustain a

---

[5] The carrying and possessing crimes required a five-year minimum that could not run concurrently with the drug trafficking sentence; the brandishing crime would have required a seven-year minimum. See 18 U.S.C. § 924(c)(1)(A)(i)–(ii), (D)(ii).

conviction under Count 9, the Government must have proved either that Lopez carried a firearm "in relation to . . . [a] drug trafficking crime" or knowingly possessed a firearm "in furtherance of" such crime. See 18 U.S.C. § 924(c)(1)(A). Lopez's convictions under 21 U.S.C. §§ 846 and 841 constitute the drug trafficking crimes. See 18 U.S.C. § 924(c)(2). We find that the evidence was sufficient to find Lopez guilty of the possession charge—a reasonable jury could find both that Lopez knowingly possessed a firearm and that he did so in furtherance of a drug trafficking crime—so we need not reach the question of whether the evidence was sufficient on the carrying charge.[6]

The government can prove possession through actual or constructive possession, and possession can be joint or sole. Gunn, 369 F.3d at 1234 (citing United States v. Crawford, 906 F.2d 1531, 1535 (11th Cir. 1990)). "To establish constructive possession, the government must show that the defendant exercised ownership, dominion, or control over the firearm or the vehicle concealing the firearm." Id. (citing Crawford, 906 F.2d at 1535).

---

[6] "[P]ossession has a broader meaning than . . . carries." United States v. Timmons, 283 F.3d 1246, 1252 (11th Cir. 2002) (internal quotations omitted).

The evidence here—specifically, Garcia's testimony—was sufficient for the jury to conclude that Lopez possessed a firearm constructively and jointly. Garcia testified as follows:

> Q. Okay. Did [the guns] belong to you or did they belong -- were they sort of company guns?
> A. I mean, we bought them, but we just left them around the house just in case anybody needed to use a weapon for any sort of reason.
> Q. Did any of those guns, did they belong or were they bought by Joe Lopez?
> A. No, sir.
> Q. Did Mr. Lopez have access to them?
> A. Yes, sir.
> Q. Any anybody [sic] in the house would have been able to get to them if they needed them?
> A. Yes, sir.
> . . . .
> Q. They weren't locked up?
> A. No, sir.

Garcia also testified that "on occasions [Lopez] had a weapon in his room." Given this testimony that Lopez could readily access the weapons in the house and had done so, a reasonable jury could infer that he possessed a firearm.[7]

---

[7] Count 9 of the indictment was likely brought against Lopez because of the Government's initial misidentification of Lopez as the person holding a gun at the top of the stairs when the agents and SWAT team officers entered. The indictment, however, did not specify that the charge was based on that gun or any particular gun allegedly possessed by Lopez. It is our duty to determine whether, based on the evidence, a jury could have found that Lopez possessed a gun, and we find that the jury could have; it is not our duty to question whether the Government should have dismissed Count 9 when it learned that the person holding the gun at the top of the stairs was Garcia.

To show that the possession was in furtherance of a drug trafficking crime, "the prosecution [must] establish that the firearm helped, furthered, promoted, or advanced the drug trafficking." United States v. Timmons, 283 F.3d 1246, 1252 (11th Cir. 2002).

> The mere presence of a firearm in an area where a criminal act occurs is not a sufficient basis for imposing this particular mandatory sentence. Rather, the government must illustrate through specific facts, which tie the defendant to the firearm, that the firearm was possessed to advance or promote the criminal activity.

Id. (quoting United States v. Mackey, 265 F.3d 457, 461 (6th Cir. 2001)). Rather,

> [a]s the Second Circuit explained in United States v. Finley, 245 F.3d 199, 202 (2d Cir. 2001), there must be "a showing of some nexus between the firearm and the drug selling operation." Id. The nexus between the gun and the drug operation can be established by the type of drug activity that is being conducted, accessibility of the firearm, the type of the weapon, whether the weapon is stolen, the status of the possession (legitimate or illegal), whether the gun is loaded, proximity to the drugs or drug profits, and the time and circumstances under which the gun is found. While these factors are not exclusive, they distinguish possession in furtherance of a crime from innocent possession of a wall-mounted antique or an unloaded hunting rifle locked in a cupboard.

Id. at 1253 (internal quotations and citations omitted).

In Timmons, we found that the district court erred in setting aside a guilty verdict; the evidence against Timmons—a "bullet proof vest, crack cocaine on the stove and under the cushions of the couch, two fully loaded firearms on top of the

11

oven and ammunition inside the oven in the living room of his apartment"—was sufficient to satisfy the "in furtherance" element of a § 924(c) violation.  Id. Similarly, we conclude the evidence here was sufficient to sustain a § 924(c) conviction.  The guns were semiautomatic pistols and a semiautomatic assault rifle, and the agents also found loaded ammunition clips for the pistols and boxes of ammunition for the assault rifle.  One hundred twenty kilograms of cocaine and $1.5 million were also found in the house.  The guns were stored in different areas of the house and readily accessible to Lopez and the other workers.  Moreover, the workers lived in the house for the purpose of conducting a cocaine operation.  In sum, a reasonable juror could conclude from this evidence that Lopez possessed a gun in furtherance of the drug trafficking crime for which he was convicted.[8]

## III.

Lopez also appeals the sentences he received on Counts 1, 6, and 7.  As noted, the district court sentenced Lopez to 292 months' imprisonment on those

---

[8] Count 9 of the superseding indictment charged that Lopez violated § 924(c) "aided and abetted by others."  To prove aiding and abetting, the prosecution must show "that a substantive offense was committed, that the defendant associated himself with the criminal venture, and that he committed some act which furthered the crime."  United States v. Hamblin, 911 F.2d 551, 557 (11th Cir. 1990).  The defendant must "share[] the same unlawful intent as the actual perpetrator."  Id. at 558.  As explained in the text, a jury could have found Lopez guilty of the substantive crime outlawed by § 924(c).  Based on the same evidence, a jury could also find Lopez guilty of the aiding and abetting charge.

12

counts.[9]  He seeks a new sentencing hearing on the grounds that the district court, in determining the adjusted offense level for the § 841(a) offense under the Sentencing Guidelines, erred in denying his request for a minor role reduction under U.S.S.G. § 3B1.2(b), and that his sentences were unreasonable.[10]

Section 3B1.2(b) states, "[i]f the defendant was a minor participant in any criminal activity, decrease [the offense level] by 2 levels."  The commentary to this guideline defines a minor participant as someone "who is less culpable than most other participants, but whose role could not be described as minimal." U.S.S.G. § 3B1.2 comment. (n.5).  Lopez argued to the district court and now argues on appeal that he was entitled to a minor role sentencing reduction because he was merely a courier who took orders, provided physical labor, and exercised relatively little discretion; he was being held accountable for a quantity of cocaine

---

[9]  Under the Sentencing Guidelines, the total offense level for Counts 1, 6, and 7 was 38, and Lopez's  criminal history category was IV.  Lopez requested a downward departure on his criminal history category because he contended that a category of IV overrepresented his criminal history.  The district court agreed and departed downward to a criminal history category of III. This yielded a sentencing range of 292 to 365 months' imprisonment for the drug convictions.

[10]  Lopez also argues that the 21 U.S.C. § 851 sentencing enhancement he received based on a 1994 conviction for 5 rocks of crack—which doubled Lopez's mandatory sentence from 10 years to 20 years—resulted in a violation of the Eighth Amendment's prohibition of cruel and unusual punishment.  We dispose of this argument in the margin, as it is foreclosed by Harmelin v. Michigan, 501 U.S. 957, 994–95, 111 S. Ct. 2680, 2701 (1991) ("Severe, mandatory penalties may be cruel, but they are not unusual in the constitutional sense, having been employed in various forms throughout our Nation's history.").  We also note that the district court exercised its discretion to impose a sentence above the 20-year mandatory minimum.

13

that he did not own or control; he was receiving a 5-year sentence for a firearm that he did not possess; he had low intelligence; he was involved in the operation for a relatively short time; and his role was relatively minor. The court disagreed, finding from the evidence adduced at trial that while

> you can quibble about the relative culpability of Mr. Lopez vis-a-vis Mr. Garcia, Mr. Trevino, but he is not entitled to a 3B 1.2 (b) adjustment unless he was substantially less culpable than the average participant.
> And I think that the evidence is overwhelming that he was equally culpable with the average participants in this enterprise, and therefore I overrule the objection to the guideline calculation that denied him the minor role.

We review a district court's denial of a role reduction for clear error. United States v. Alvarez-Coria, 447 F.3d 1340, 1343 (11th Cir. 2006) (per curiam). "Two principles guide a district court's consideration: (1) the court must compare the defendant's role in the offense with the relevant conduct attributed to him in calculating his base offense level; and (2) the court may compare the defendant's conduct to that of other participants involved in the offense." Id. The defendant must prove his minor role by a preponderance of the evidence. See United States v. Rodriguez De Varon, 175 F.3d 930, 939 (11th Cir. 1999) (en banc). But, "a defendant is not automatically entitled to a minor role adjustment merely because

she was somewhat less culpable than the other discernable participants." Id. at 944.

The district court did not clearly err in denying Lopez's request for a minor role reduction. Lopez was an instrumental part of the cocaine operation. He lived in the stash house and was responsible for making cocaine deliveries and collecting money, as well as for other activities—the evidence showed that the workers interchanged duties. Moreover, he was held accountable only for the cocaine he controlled. His argument regarding the firearm is also without merit for the reasons discussed in part II, supra. The district court therefore properly denied Lopez's minor role reduction request.[11]

We now turn to Lopez's argument that his sentences for the drug convictions are unreasonable. Lopez was subject to a 240-month mandatory

---

[11] Lopez asserts in his brief that "[t]he district court was required to examine the relative culpabilities, including the differing length of time spent in the conspiracy by different participants, prior to expanding to the more generalized 'average participant.'" The district court, however, was not required even to conduct the inquiry of how Lopez's conduct compared with that of his co-defendants:

> First, and most importantly, the district court must measure the defendant's role against the relevant conduct for which she was held accountable at sentencing; we recognize that in many cases this method of analysis will be dispositive. Second, the district court may also measure the defendant's role against the other participants, to the extent that they are discernable, in that relevant conduct.

Rodriguez De Varon, 175 F.3d at 945 (emphasis added).

15

minimum on the drug convictions, and the Guidelines range was 292 to 365 months.[12]  The district court sentenced him to prison terms of 292 months—the bottom of the Guidelines range.  Lopez argues that his sentences are procedurally and substantively unreasonable.  Whether the district court imposed reasonable sentences is reviewed for abuse of discretion.  Gall v. United States, 552 U.S. 38, 51, 128 S. Ct. 586, 597 (2007).  "[T]he party who challenges the sentence bears the burden of establishing that the sentence is unreasonable."  United States v. Talley, 431 F.3d 784, 788 (11th Cir. 2005) (per curiam).

Lopez argues that his sentences are procedurally unreasonable because the district court based them on two clearly erroneous facts: that Lopez was an equal participant to Trevino and Garcia and that 292 months was a more effective deterrent than 240 months.  The finding on Lopez's culpability was not clear error given that Lopez lived in the stash house and sometimes changed roles with the other workers.  Lopez offered no evidence to support his deterrence argument, and it therefore fails, because he bore the burden of proof on it.

Lopez argues that his sentences are substantively unreasonable because they are greater than necessary given his intellectual capacity, role in the offense, his

---

[12]  See supra note 9.

16

criminal history (his criminal history was category III, even though he had only one prior felony conviction), and his age. Regarding his criminal history, the district court properly considered it and departed downward from a criminal history category of IV to III. The sentences imposed were at the bottom of the Guidelines range even after the downward departure. Although we are not required to presume Lopez's sentences are reasonable because they were imposed within the Guidelines sentencing range, we "ordinarily . . . expect a sentence within the Guidelines range to be reasonable." Id. We are not persuaded that Lopez's intellectual capacity, role in the offense, or age demanded below-Guidelines sentences, or that the district court abused its discretion by failing to impose such sentences.

## IV.

For the foregoing reasons, Lopez's conviction on Count 9 and his sentences on Counts 1, 6, and 7 are

AFFIRMED.